580 F.2d 1203
 45 A.L.R.Fed. 819
 James D. DONOVAN, Appellant,
v.
UNITED STATES of America, Martin R. Hoffman, Secretary of
the Army, Major General Albert Crawford, Commanding General,
U. S. Army Electronics Command, Fort Monmouth, Malcolm R.
MacKenzie, Civilian Personnel Officer, U. S. Army
Electronics Command, Fort Monmouth.
 No. 77-2003.
 United States Court of Appeals,
Third Circuit.
 Argued March 28, 1978.
Decided July 26, 1978.
 
 Joseph Meehan, Meehan & Kenny, Long Branch, N. J., for appellant.
 Jonathan L. Goldstein, U. S. Atty., Maryanne T. Desmond, Asst. U. S. Atty., Newark, N. J., George E. Mittelholzer, Asst. U. S. Atty., Newark, N. J., on the brief; Captain James K. Jackson, Dept. of the Army, Washington, D. C., of counsel and on the brief, for appellees.
 Before ADAMS, VAN DUSEN, and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 The role of the federal government as an employer has expanded rapidly over the last quarter century, and so too has its obligation to deal fairly and equitably with its employees.[1] Nonetheless, federal employees' rights are not unlimited and extend no further than the limits of federal law and the constitution. In this action we face the problem of closely defining such limits.
 
 
 2
 Plaintiff, a civilian employee of the United States Army Electronics Command ("ECOM"), challenges the remedy afforded him by the Army after its erroneous refusal to grant him repromotion consideration following his reinstatement at ECOM subsequent to a reduction in force ("RIF").[2] He asserts that statutory and regulatory provisions entitle him to reclassification and back pay. The district court, recognizing its limited power to review Government employment practices, dismissed plaintiff's complaint for failure to state a claim predicated on any provision upon which relief could be granted. We affirm.
 
 I.
 
 3
 Plaintiff is a career civil service employee who had worked for various federal agencies from 1963 until 1969. On April 13, 1969, he was transferred to ECOM, stationed at Fort Monmouth, New Jersey, and given the position of Training Instructor (Electronics), a GS-9 conditional appointment. On March 27, 1970, pursuant to a cut-back in civilian positions, plaintiff was given a reduction in force notice. Before the RIF became final, however, he was separated from ECOM and appointed through the Interagency Board of Civil Service Examiners to a GS-7 position at the Federal Aviation Agency. On February 26, 1971, he was terminated for cause from this position.
 
 
 4
 Some months later, plaintiff secured reinstatement at Fort Monmouth as a guard, a GS-4 conditional position. At this time, plaintiff's name should have been placed on the repromotion register at ECOM, thus permitting him to be repromoted non-competitively to his old job or any intermediate position between the guard job and his prior GS-9 rating. Instead, due to an administrative error, plaintiff's name was omitted from the register. Not knowing of this, on February 20, 1972, he applied for and was promoted to the position of computer aid at the GS-5 level. But in November of the same year plaintiff realized that ECOM had failed to give him reemployment consideration. He then began to challenge his employment status, asserting claims with ECOM that he had been denied special repromotion benefits due him under the Army's civilian employee regulations. After failure to informally resolve this problem, plaintiff began formal grievance proceedings.
 
 
 5
 In his grievance against ECOM, plaintiff proved that he was erroneously denied repromotion consideration. As a result, he demanded back pay and retroactive promotion. The acting commander of ECOM concluded that although plaintiff had been the victim of an error, no retroactive benefits could be given. Instead, he ordered that plaintiff be given "repromotional eligibility" to his old position at ECOM that is that he Must be given the job before others with less seniority on the eligibility list and that he be given priority consideration for any available new job for which he qualified.
 
 
 6
 On appeal to the Army Civilian Appellate Review Office, the decision of ECOM was affirmed. The examiner found that plaintiff had been denied special repromotion consideration as required by personnel regulations and that the failure of the Army to place him on the repromotion register was in error. As to the appropriate relief for this violation, the examiner recommended priority consideration for the next available vacancy to which plaintiff qualified, but rejected his claim for retroactive benefits.
 
 
 7
 At the time of this decision, the Army had no positions available because of a job freeze. Nonetheless, ECOM sought an exception for plaintiff and some four months later he was appointed to a GS-9 level position. By 1974, plaintiff had progressed to a GS-11 rating, but the facts reveal that during the time plaintiff's name erroneously had been absent from the repromotion register, at least one other employee with lower seniority was appointed to a GS-9 vacancy. Therefore, plaintiff continued to press his administrative claims and to assert his retroactive benefits theory. By 1975, he had exhausted all channels of administrative relief.
 
 
 8
 This action was filed in January of 1976. Plaintiff's complaint asked the district court to declare that plaintiff would have been reappointed to his old job at an earlier date and hence would have been eligible for promotion earlier as well, had plaintiff properly been listed on the repromotion register. He then sought both retroactive reclassification and back pay under the Back Pay Act, 5 U.S.C. § 5596 (1976) (the "Act") and under Civil Service and Army regulations. The district court dismissed the complaint for failure to state a claim upon which relief could be granted because plaintiff did not present sufficient proof of any statute or regulation allowing the district court to award back pay.[3] This appeal followed.
 
 
 9
 On appeal, plaintiff raises four claims, only two of which we discuss in any detail: (1) whether the Back Pay Act entitled plaintiff to back pay and retroactive promotion and (2) whether the district court had mandamus power to order retroactive promotion with concomitant effects on back pay.[4] We assess these issues independently.
 
 II.
 
 10
 A claim for back pay by a federal employee, in essence, amounts to a lawsuit against the United States for monetary damages. In order to determine if such a lawsuit is proper, we must assess whether the United States has granted a right to sue it for damages, for it "has long been established . . . that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . .' " United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), Quoting, United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Our duty then is to examine the federal statutes invoked by the plaintiff and ascertain whether they " confer a substantive right to recover money damages from the United States." United States v. Testan, supra, 424 U.S. at 398, 96 S.Ct. at 953.
 
 
 11
 Plaintiff asserts that the Act is an explicit federal provision allowing the award of monetary damages against the United States in the context of an unwarranted employment decision of an agency of the Government. The Act provides in pertinent part:
 
 
 12
 (b) An employee of an agency who . . . is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee
 
 
 13
 (1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect, an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred . . . .
 
 
 14
 5 U.S.C. § 5596(b)(1) (1976).
 
 
 15
 In order for plaintiff to come within the terms of this section, he must prove: (1) that he had "undergone an unjustified or unwarranted personnel action" and (2) that the action "resulted in the withdrawal or reduction of all or a part of (his) pay, allowances, or differentials." Plaintiff cannot establish qualification under either requirement of the Act.
 
 
 16
 The terms "unjustified or unwarranted personnel action" standing alone cannot take us far in our quest to determine their meaning or to determine whether the Army's delay in repromoting plaintiff to his old position in the instant case qualifies as such an action. We therefore turn for guidance to the regulations enacted by the Civil Service Commission pursuant to congressional authorization in the Act, 5 U.S.C. § 5596(c) (1976):
 
 
 17
 (d) To be unjustified or unwarranted, a personnel action must be determined to be improper or erroneous on the basis of either substantive or procedural defects after consideration of the equitable, legal, and procedural elements involved in the personnel action.
 
 
 18
 (e) A personnel action referred to in section 5596 of title 5, United States Code, and this subpart is any action by an authorized official of an agency which results in the withdrawal or reduction of all or any part of the pay allowances, or differentials of an employee and includes, but is not limited to, separations for any reason (including retirement), suspensions, furloughs without pay, demotions, reductions in pay, and periods of enforced paid leave whether or not connected with an adverse action . . . .
 
 
 19
 5 C.F.R. § 550.803(d) & (e) (1977).
 
 
 20
 We assume for the purposes of this appeal that the failure to give repromotion consideration to plaintiff was an unjustified or unwarranted action.[5] However, unless this action was a "personnel action" as defined by the Act and the regulations, plaintiff cannot qualify for back pay under the statute.
 
 
 21
 The regulations state that a "personnel action . . . includes, but is not limited to, separations for any reason . . ., suspensions, furloughs without pay, demotions, reductions in pay, and periods of enforced paid leave . . . ." 5 C.F.R. § 550.803(e) (1977). Under the doctrine of Ejusdem generis it would appear that the language "includes, but is not limited to" indicates that any other action falling within the scope of the regulation must be of the same nature as those listed. The common thread of the activities outlined by the regulation is that they involve an actual reduction in job status. Thus, to qualify as a "personnel action" the agency's action which is under attack must result in a reduction of job grade or level. This interpretation is reinforced by the Supreme Court's understanding of the Act.
 
 
 22
 The statute's language was intended to provide a monetary remedy for wrongful reductions in grade, removals, and suspensions and "other unwarranted or unjustified actions affecting pay or allowances (that) could occur in The course of reassignments and change from full-time to part-time work," S.Rep.No.1062, 89th Cong., 2d Sess., 3 (1966). The Commission has so construed the Back Pay Act. See 5 C.F.R. § 550.803(e) (1975). So has the Court of Claims. See Desmond v. United States, 201 Ct.Cl. 507, 527 (1973).
 
 
 23
 United States v. Testan, supra, 424 U.S. at 405-06, 96 S.Ct. at 957 (emphasis supplied).
 
 
 24
 The unwarranted failure timely to promote plaintiff in accordance with Army regulations, though a wrongful act, is not the type of personnel action calling for back pay under the Back Pay Act, for the action has not caused plaintiff to suffer any reduction in grade but has only delayed his advancement to a higher level. Plaintiff's claim under the act must therefore fall. Even were we to conclude that plaintiff had been subjected to a "personnel action," his claim would still fail because the action did not result in any "reduction" in benefits.
 
 
 25
 The delay in promoting plaintiff did not produce a Reduction in his pay. Had plaintiff shown that his RIF was unlawful, he could have demonstrated a correlation between the challenged action of the agency and a pay reduction, but the facts in the instant case prove no more than that the plaintiff received the proper salary for the position in which he was employed. His claim amounts to an assertion that he should have been paid at a higher rate for a position to which he should have been but was not appointed. "The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it." United States v. Testan, supra, 424 U.S. at 402, 96 S.Ct. at 955, Citing, United States v. McLean, 95 U.S. 750, 24 L.Ed. 579 (1878); Ganse v. United States, 376 F.2d 900, 902, 180 Ct.Cl. 183, 186 (1967). Because plaintiff has suffered no real Reduction or Withdrawal of benefits, and has suffered only the denial of potential benefits, he cannot come within the terms of the Back Pay Act.[6]
 
 III.
 
 26
 Plaintiff asserts that even if he cannot maintain a claim for monetary damages under the Back Pay Act, he is entitled to an order forcing ECOM to grant him retroactive promotion, and hence back pay and other benefits, by way of a writ of mandamus. 28 U.S.C. § 1361 (1970) (mandamus may be issued "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff"). Such a remedy has been recognized by the Supreme Court as a viable alternative for relief when a plaintiff cannot make out a claim under the Act. See United States v. Testan, supra, 424 U.S. at 403, 96 S.Ct. 948.[7]
 
 
 27
 Mandamus is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a governmental official who refuses to act. Grant v. Hogan, 505 F.2d 1220, 1225 (3d Cir. 1974) (mandamus available where there is a clear duty "owed the plaintiff or there is an abuse of discretion"). In order to establish the predicate for mandamus relief here, plaintiff must demonstrate an actual failure by ECOM officials to carry out clearly defined official duties. Thus, unless applicable principles of law require ECOM to grant retroactive repromotion, mandamus is inappropriate.
 
 
 28
 A government employee is entitled only to the rights and salary of the position to which he has been appointed. United States v. Testan,supra, 424 U.S. at 403, 406, 96 S.Ct. 948; Skrobot v. United States, 534 F.2d 237, 208 Ct.Cl. 475 (1975); Peters v. United States, 534 F.2d 232, 234, 208 Ct.Cl. 373 (1975); Selman v. United States, 498 F.2d 1354, 204 Ct.Cl. 675 (1974). A court, however, does have power to grant retroactive promotion when an employee has a "clear legal entitlement" to the desired classification based upon statute or regulation. See Peters v. United States, supra, 534 F.2d at 234.
 
 
 29
 The Civil Service Regulations applicable at the time plaintiff was reinstated at ECOM following his RIF, vested him with certain rights which would have insured his repromotion to his old position when a vacancy arose.[8] Army regulations provided similar protection for RIF'd employees.[9]
 
 
 30
 Were these the only regulations applicable to agency action following reinstatement after a RIF, we might very well have ordered retroactive promotion with its concomitant benefits. See Skrobot v. United States, supra, 534 F.2d at 240 (dicta) (court indicates that under analogous provisions of FPM 335.4-3b it would award retroactive promotion and benefits); Cf. Selman v. United States, supra, (two naval Assistant Judge Advocates General proved statutory entitlement to higher pay under 37 U.S.C. § 202(L ); court ordered retroactive benefits). The regulations here, however, do not stop with establishing plaintiff's entitlement to repromotion consideration. Rather, they specifically outline the proper remedies to be given to the aggrieved employee in the event of the failure of the agency to follow its regulations:
 
 
 31
 f. Promotion after failure to receive proper consideration. If an employee fails to receive proper consideration in a promotion action and the erroneous promotion is allowed to stand, the employee must be Considered for the next appropriate vacancy to make up for the consideration he lost. (See Section 6-4c) He may be selected for promotion to this vacancy, in competition with others entitled to the same consideration, as an exception to competitive promotion procedures.
 
 
 32
 Plaintiff has received all that was due to him under these provisions. His entitlement to repromotion consideration, although erroneously delayed, does not mandate any retroactive repromotion by the agency. Rather, under applicable regulations, plaintiff was to receive no more than consideration for the next vacancy in the event of agency oversight. Thus, mandamus cannot be properly invoked for no provision calls for retroactive benefits and consequently no official failed to carry out any Clear duty owed to plaintiff.[10] The district court, therefore, did not err in dismissing the claim for retroactive benefits.
 
 IV.
 
 33
 Accordingly, the judgment of the district court will be affirmed.
 
 
 34
 ADAMS, Circuit Judge, concurring in part and dissenting in part.
 
 
 35
 Consideration of this appeal, at least for me, is framed by two circumstances which the government does not appear to dispute: First, Donovan, the appellant here, was not promoted for two years, and during that time jobs were available for which he was qualified and to which he was entitled to priority consideration under the governing regulations. Second, the failure to promote Donovan was a clear administrative error, admitted as such by the government.
 
 
 36
 Despite the fact that the deferral in promotion was "unwarranted" and "wrongful,"[1] the majority concludes that Donovan is entitled to no relief. Since I believe that certain of the relief sought by him is available, I am impelled to dissent in part.
 
 
 37
 Donovan advances two related claims. Given the fact that action by the Defense Department in accordance with its own regulations would have resulted in his appointment to a GS-9 position two years in advance of the time when he was actually appointed, Donovan asserts entitlement to back pay at the level of GS-9 for the duration of the delay. In addition, he maintains that his personnel records, which will affect his entitlement to a variety of privileges and opportunities in the future should be amended to allow him seniority credit for the two years in which he was unjustifiably kept at GS-7. These claims are best analyzed separately.
 
 A.
 
 38
 The back pay claim falls most appropriately under the Federal Back Pay Act.[2] While it is not implausible to read the Back Pay Act to cover a denial of re-promotion,[3] the Supreme Court's opinion in United States v. Testan, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) dictates that inasmuch as it is a waiver of sovereign immunity, the Back Pay Act is to be strictly construed. The Act, according to the Supreme Court, "was intended to grant a monetary cause of action only to those who were subjected to a reduction in their duly appointed emoluments or position." Id. at 407, 96 S.Ct. at 957. The spirit, if not the letter of Testan therefore appears to foreclose Donovan's claim for back pay, and as to this issue I concur with the result reached by the majority.
 
 B.
 
 39
 Such conclusion, however, does not dispose of the case, for in addition to requesting monetary damages, Donovan invokes the equitable powers of the courts to regain the two years of seniority which he was improperly denied.[4] This request, of course, stands on a different ground from his claim for back pay. For, as the Supreme Court noted in Testan, "There is a difference between prospective reclassification, on the one hand, and retroactive reclassification resulting in money damages, on the other. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)."[5] The citation to Edelman indicates that the shield of sovereign immunity does not extend to interdict a prospective order requiring the government to comply with legal duties.
 
 
 40
 Here, the government admits that it failed to consider Donovan for promotion in direct violation of its own regulations, and has thereby, in the words of the majority, "delayed his advancement to a higher level."[6] Although Testan may bar the award of monetary damages for lost wages in the past, nothing in the Supreme Court opinion appears to preclude a federal court from ensuring that the government does not predicate future denials of benefits or promotions on the two-year delay occasioned by its prior solecism.
 
 
 41
 While the majority opinion admits such relief "might very well" be appropriate if the regulations guaranteeing Donovan repromotion opportunities provided no remedy in themselves, the majority adopts the position that regulations mandating that Donovan be considered for the next available vacancy shackle the exercise of our equitable powers. No case support is adduced for such a conclusion, and the language cited is at best ambiguous. The regulations require that Donovan "Must " be considered for the next available promotion, not that he "need only be" so considered. I am reluctant to conclude that the grant of a self-enforcing administrative remedy precludes the federal courts from fashioning other relief should the administrative route prove inadequate to rectify the effects of a concededly improper governmental action.
 
 
 42
 Accordingly, insofar as the dismissal of Donovan's claim for injunctive relief regarding his personnel records is affirmed, I respectfully dissent.
 
 
 
 [1]
 See generally Frug, Does the Constitution Prevent the Discharge of Civil Service Employees? 124 U.Pa.L.Rev. 942, 943-70 (1976)
 
 
 [2]
 The Civil Service Commission considers a reduction in force to encompass releases of employees from their jobs due to separations, demotions, furloughs for more than 30 days, or reassignments requiring displacement, whenever the release is required because of "lack of work, shortage of funds, reorganization, reclassification due to change in duties, or the exercise of reemployment or restoration rights." 5 C.F.R. § 351.201(a) (1977). After a RIF, the agency is required to provide an exception to competitive promotion procedures and repromote an employee to his former grade or give him special consideration for such a promotion in the event a vacancy occurs. See Federal Personnel Manual ("FPM") 335.4-3(c)(1) & (2)
 
 
 [3]
 In its order of April 26, 1977, the district court characterized plaintiff's claim as involving the question of his entitlement to "retroactive back pay." The court did not, however, discuss plaintiff's other claims for benefits such as retroactive promotion and administrative reclassification. The court's order dismissed "plaintiff's action . . . with prejudice and without costs, for failure to state a cognizable claim . . . ." We treat this order as pertaining to all of plaintiff's claims, although the court addressed specifically only those for back pay
 
 
 [4]
 Additionally, plaintiff asserts that the defendants' arbitrary and capricious refusal to grant him retroactive benefits amounts to an abuse of discretion and thus renders that decision nugatory. He also claims that the failure to grant him retroactive reclassification and back pay was a breach of his employment contract. We find neither argument meritorious
 
 
 [5]
 The failure of the army to give plaintiff repromotion consideration at the time of his reinstatement at ECOM appears to be a procedural violation of his rights as defined by the Civil Service. See FPM 335.6-4a(2)(a)(i)
 
 
 [6]
 Plaintiff points to two cases in which courts have ordered back pay to claimants. Both cases, arising before Testan and under provisions other than the Back Pay Act, are easily distinguishable from the instant case. In Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971), the Court of Claims held that an employee, who had been denied employment rights because of her race, was entitled to retroactive promotion and back pay. The order, however, was based upon a clear statutory basis to remedy race discrimination. Selman v. United States, 498 F.2d 1354, 204 Ct.Cl. 675 (1974), is also distinguishable. In that case, two federal employees serving as captains in the Navy working as Assistant Judge Advocates General claimed that they should have received the higher pay of Rear Admirals. The court agreed and made such an award, but unlike this case, there was a clear statutory provision providing for the higher pay
 Moreover, Testan itself reinforces the conclusion that plaintiff has no claim based on the delay in his repromotion for benefits under the Act. In Testan, two Government trial attorneys at the GS-13 level asked for back pay and retroactive benefits at the GS-14 level, asserting that their jobs had been incorrectly classified. The Supreme Court denied relief because the Back Pay Act gave no authority to the Court to award salary commensurate to positions to which employees were not appointed. Similarly, this case amounts to a demand for benefits of a position claimed by the plaintiff to be rightfully his but to which he was not appointed.
 
 
 [7]
 The Court stated that such relief was available only prospectively. United States v. Testan, supra, 424 U.S. at 403, 96 S.Ct. 948. We assume for purposes of this appeal, without deciding, that in a proper case such relief also may be granted retroactively
 
 
 [8]
 The Civil Service Regulations provide in pertinent part:
 c. Repromotion to grades or positions from which demoted without personal cause. (1) General. An agency must provide for an exception to competitive promotion procedures to allow for repromotion to a grade or position from which an employee was demoted in the agency without personal cause, that is, without misconduct or inefficiency on the part of the employee and not at his request. . . .
 (2) Special consideration for repromotion. An employee demoted without personal cause is entitled to special consideration for repromotion in the agency in which he was demoted. Although he is not guaranteed repromotion, ordinarily he should be repromoted when a vacancy occurs in a position at his former grade (or any intervening grade) for which he has demonstrated that he is well-qualified. . . .
 (3) Applicability to certain reemployed employees. The provisions of this paragraph apply to an employee who was separated by reduction in force and later reemployed at a lower grade.
 FPM 335.4-3c(2) & (3).
 
 
 [9]
 The regulations provide in pertinent part:
 When a position from which an employee has been demoted through RIF becomes vacant and is being filled, the demoted employee will be promoted noncompetitively to the position. . . . If more than one employee meets this criteria, the employee with the highest retention standing will be promoted. . . .
 Army Material Command ("AMC") reg. 690-2.
 e given priority to Next vacancy).
 
 
 [10]
 In contrast to plaintiff's complaint over failure to retroactively promote him after a lawful RIF are the remedies provided by the Civil Service for a complaint over the RIF itself. In such a case, the agency specifically is charged with granting retroactive benefits, See 5 C.F.R. § 351.903 (1977) ("when an agency decides that an action . . . was unjustified or unwarranted and restores an individual to his former grade . . . it shall make the restoration retroactively effective. . . ."). Mandamus in such an action could be proper. With no parallel remedy clearly given by any regulation dealing with an erroneous promotion action, plaintiff cannot qualify for the extraordinary relief provided by the mandamus statute
 The dissent notes that Testan distinguishes between an award of "prospective reclassification" and an award of "retroactive reclassification resulting in money damages." Dissenting Op. at 1211. The dissent apparently equates a prospective reclassification with a retroactive reclassification Not resulting in money damages. However, Testan could not have made this equation because prospective reclassification is not the same as retroactive reclassification; the terms have opposite meanings. The former implies promotion effective upon discovery of an error resulting in present reclassification. The latter implies promotion effective sometime in the past. Donovan has been awarded prospective reclassification at ECOM as permitted by Testan. We hold only that no statute or regulation entitles him to retroactive reclassification.
 The dissent also states that we should ignore the "shackles" of the remedy enacted by the Civil Service to compensate employees for erroneous agency employment decisions and that we should substitute a remedy which we believe to be more "equitable." Dissenting Op. at 1112. In our view this would not be an appropriate exercise of judicial discretion. Without clear authorization to do more, Donovan is entitled only to such relief as he has been provided by statute or regulation. The agency has fashioned the contractual terms of its obligation to its employees by the regulations it has adopted pursuant to congressional statute. We may not alter those terms by substituting our views of the contractual relationship between the parties.
 Although it is true that Donovan's promotion was erroneously delayed, it is undisputed that as soon as the administrative error was discovered, he was given immediate promotion in spite of a prevailing job freeze. Thus, Donovan received all available consideration.
 
 
 [1]
 Majority opinion, page 1207
 
 
 [2]
 5 U.S.C. § 5596(b)(1). That Act provides a remedy for those who have "undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of . . . pay, allowances or differentials."
 
 
 [3]
 The regulations implementing the Back Pay Act define the "personnel action" covered by the Act to "include" but not be "limited to" "separations . . . suspensions, furlough without pay, demotions, reductions in pay and periods of enforced paid leave." 5 C.F.R. § 550.803(e). Even assuming that despite the wording of the regulation, the definition is limited to actions "of the same nature as those listed", it is difficult to discern the clear distinction between an "enforced paid leave" and an unwarranted refusal to repromote
 
 
 [4]
 Donovan's brief on appeal phrases his argument primarily in terms of a request for relief under the mandamus provisions of 28 U.S.C. § 1361. However, his complaint makes it clear that he seeks jurisdiction under 28 U.S.C. §§ 1331 and 1346(a)(2) as well, and prays for a declaratory judgment and an appropriate implementing order under 28 U.S.C. §§ 2201 and 2202. Since, if Donovan's claim is worth less than $10,000, the district court may exercise jurisdiction under § 1346, and if it is worth more, jurisdiction lies under § 1331, there is no reason to limit analysis to the propriety of mandamus under § 1361
 
 
 [5]
 424 U.S. 392, at 403, 96 S.Ct. 948 at 955, 47 L.Ed.2d 114
 
 
 [6]
 Majority opinion, page 1207