Clair D. OLSEN, Plaintiff-Appellant,

v.

John D. ARRINGTON, Supervisor, Commissioners, Herman A. Staiman, Thomas J. Mangan, The United States of America and the Department of the Air Force, Defendants-Appellees.

No. 78–1242.

United States Court of Appeals,
Tenth Circuit.

Argued May 16, 1979.

Decided May 20, 1980.

Lyle J. Barnes, Kaysville, Utah, for plaintiff-appellant.

Wallace Boyack, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, on brief), for defendants-appellees.

Before HOLLOWAY, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This appeal arises out of a Back Pay Act case brought by Clair D. Olsen, a civilian employee at the Hill Air Force Base in Utah. Olsen obtained a federal district court ruling that the retirement he took August 30, 1974, was involuntary. He then was reinstated by the Air Force on September 26, 1977. Approximately two months later Olsen petitioned the court for an order requiring appellees to show cause why he had not been accorded all the benefits to which he was entitled under the reinstatement order.

The parties reached a settlement on some of the disputed benefits; trial was had on the rest. The court declined to hold the Air Force in contempt for noncompliance, finding there was no bad faith, and ruled against Olsen on the remaining issues.

On appeal Olsen raises a number of issues that we treat under four headings: (1) right to retroactive promotion to grade 9 and accompanying back pay; (2) correctness of back pay offset formula; (3) right to retire now under early retirement options; and (4) discrimination, Fourteenth Amendment and other claims.

Appellees have moved to strike certain arguments made by Olsen as not within the issues treated below, and to strike certain documents appended to appellant's briefs on the ground that these papers are outside the record. We agree that the documents are not properly part of the record on appeal as defined by Fed.R.App.P. 10(a), and accordingly grant that aspect of appellees' motion. We treat the arguments appellees seek to strike under the appropriate headings below.

In 1974 Olsen was working as a grade 7 production controller in the parachute, rubber and textile shop at Hill Air Force Base, apparently doing both production and work load scheduling. He took sick leave for several months beginning April 2, 1974. He returned to work on August 30, 1974, after his application for disability retirement was rejected. Upon his arrival at work that day he was confronted with a difficult situation. His old job was no longer available because the production control work previously performed in that shop by three people had been consolidated and was now handled by the two other production controllers. He was offered another job at the same grade, series, title, pay, and with the same duties, but under a different supervisor in another building. Coincidentally, August 30 was also the last day for exercising an early retirement option, which was available because of a major reduction in force at the base. Pressured by his uncertainty over whether to take the new job and the deadline for making the retirement decision, Olsen completed and filed the retirement forms under protest. He then initiated administrative proceedings to set aside this retirement. These proceedings finally culminated on September 6, 1977, with the federal district court ruling that time pressure rendered his retirement involuntary. The order stated, "Plaintiff is reinstated to

the grade and position [he] had immediately prior to his optional retirement, with entitlement to all benefits from the date thereof, to which that position entitles him." Olsen was returned to work the following September 26 as a grade 7 production controller.

## I

### Right to Retroactive Promotion to Grade 9 And Accompanying Back Pay

The district court, in reversing the retirement action, sought to place Olsen in the position he would have been in had the wrongful separation not occurred. This is the goal of the Back Pay Act, 5 U.S.C. § 5596. See 5 C.F.R. § 550.804(a) (1979). Olsen contends that retroactive promotion to grade 9 is necessary to fully accomplish this objective for the following reasons: (1) he is entitled to promotion because grade 7 production controllers were reclassified as a group to grade 9; (2) he was performing solely production scheduling duties before retirement, and these duties are now assigned only to grade 9 production controllers; and (3) he would have been promoted to grade 9 on a competitive basis except for the wrongful separation.

The general category of production controllers includes individuals performing two types of duties—production scheduling, generally done by grade 9 employees, and material scheduling, generally done by grade 7 workers. At the time of Olsen's retirement the grade 7 production controllers were doing both production and material scheduling. But after a general reorganization in 1974 and 1975, all production scheduling duties were assigned to grade 9 positions, and all material handling duties to grade 7. The new grade 9 positions created by this reorganization were filled competitively. Out of twenty grade 7 employees in Olsen's division, sixteen or seventeen had been promoted to grade 9 by 1977. It was on the basis of this evidence that the trial judge found that no reclassification of the grade 7 positions had occurred. The finding is adequately supported by the evidence. Therefore, Olsen is not entitled to promotion on this ground.

Prior to retirement, Olsen had been doing mainly production scheduling, even though as a grade 7 production controller his primary duty was supposed to be material scheduling. He was reinstated in 1977 as a grade 7 production controller, but in this position he was assigned only material scheduling. Thus, there was some change in the content of the work. But after a lapse of time such as is involved here, it is not unusual that one in Olsen's position could not be returned to the identical duties held previously. That Olsen was returned to the same grade and position is sufficient. Further, had he not retired, Olsen would have been at grade 7 (assuming no promotion) and pursuant to the reorganization presumably would have been relegated to solely material scheduling, the identical position he occupies now. Consequently, Olsen's second argument is unpersuasive.

Olsen's final argument for demanding retroactive promotion as part of his reinstatement is that if he had continued working he would have been promoted. The evidence showed that the competitive selection process for promotions, although entailing some objective ranking based on test results and supervisors' evaluations, was at the final stage a purely discretionary selection by the managers. The question we must address is whether the court has the power to grant a promotion based on the likelihood an employee would have received one but for the wrongful action.

Because the United States is a sovereign and therefore immune from suit without its consent, a court's jurisdiction to entertain such a suit is narrowly circumscribed by the terms of that consent. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). The court can base its jurisdiction, in the context of this case, on the mandamus provision and the Back Pay Act.

Federal district courts have mandamus power under 28 U.S.C. § 1361, "to compel an officer or employee of the United States or any agency thereof to perform a duty

owed to the plaintiff." Under this section the court may order a promotion, but only when plaintiff has a clear legal entitlement to it. *See Donovan v. United States*, 580 F.2d 1203, 1208–09 (3d Cir. 1978). *See also United States v. Testan*, 424 U.S. at 403, 96 S.Ct. at 955 (dicta indicating federal district court can only mandamus a promotion prospectively). Since promotion to grade 9 was subject to the agency's discretion, the court cannot give Olsen his requested relief by virtue of its mandamus power.

*United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), ruled that the Back Pay Act, 5 U.S.C. § 5596, does not give courts jurisdiction to entertain suits by federal employees who claim to be entitled to a higher position. The Supreme Court construed the statute narrowly to apply only to cases in which there has been a reduction in a duly appointed position.

Congress, of course, now has provided specifically in the Lloyd-LaFollette Act, 5 U.S.C. § 7501, for administrative review of a claim of wrongful adverse action, and in the Back Pay Act for the award of money damages for a wrongful deprivation of pay. But federal agencies continue to have discretion in determining most matters relating to the terms and conditions of federal employment. One continuing aspect of this is the rule, mentioned above, that the federal employee is entitled to receive only the salary of the position to which he was appointed, even though he may have performed the duties of another position or claims that he should have been placed in a higher grade. Congress did not override this rule, or depart from it, with its enactment of the Back Pay Act. It could easily have so provided had that been its intention.

*Id.* at 406, 96 S.Ct. at 957. *See also Donovan v. United States*, 580 F.2d 1203, 1207–08 (3d Cir. 1978).

We recognize that the Back Pay Act was intended to place plaintiff in the same position as before the wrongful separation occurred. We do not think it gives the courts the power, however, to intrude into areas within an agency's discretion. We find, therefore, that the court had no power to grant plaintiff a retroactive promotion, nor to award back pay at a rate higher than for the grade level held by him at the time of separation.[1]

## II

*Correctness of Back Pay Offset Formula*

Next we address the matter of the proper formula for computing the back pay setoff. The appropriate regulation under the Back Pay Act is as follows:

(e) In computing the amount of back pay due an employee under section 5596 of title 5, United States Code, the agency shall deduct the amounts earned by the employee from other employment during the period covered by the corrected personnel action. The agency shall include as other employment only that employment engaged in by the employee to take the place of the employment from which the employee was separated by the unjustified or unwarranted personnel action.

5 C.F.R. § 550.804(e) (1979). The Federal Personnel Manual 990–2, Book 550, pg. 64.-01–02, contains the following excerpt from an unpublished Comptroller General Decision:

If the employee was engaged in outside part-time employment prior to the separation, this part-time employment does not constitute "other employment" within the meaning of the Section 5596 of Title 5, United States Code, and the monies received therefrom are not deductible

---

1. Our holding on the retroactive promotion issue makes it unnecessary to comment on the claim Olsen raises, for the first time on appeal, that he is entitled to retroactive promotion from January 1972 because he had been doing production scheduling, a higher grade duty, since that date. To the extent Olsen is making a claim here for promotion based on the performance of higher grade duties, as distinguished from his claim for the retroactive promotion based on the likelihood he would have received one but for the wrongful separation, it is a collateral issue and outside the scope of this reinstatement proceeding.

from the gross back pay. *Only pay received for employment beyond the part-time employment would be set off* against back pay computations. That is, if the employee worked 20 hours on his part-time job and during the period of separation worked 40 hours, the amount of pay representing the 20 hours additional time worked beyond that worked on his or her normal part-time job would be set off against the back pay computation. (Unpublished Comptroller General decision B–148637, January 29, 1968, and *id.* B–178143, July 9, 1973)

(emphasis added).

The figures are not in dispute. Olsen worked 40 hours a week in federal employment and 28 hours in private part-time employment. During his separation he worked 55 hours a week at the part-time job. The government would exclude 28 hours from the 55 hours, since this was the amount of part-time employment engaged in prior to separation, resulting in an offset of 27 hours per week. Olsen claims the government may not use 55 hours total for its computation, but may only use the normal work week of 40 hours; otherwise plaintiff would be penalized for being industrious. Accordingly, Olsen would exclude 28 hours from 40 hours, leaving a 12 hour offset.

■ We find Olsen's position unsupportable. The reason for excluding previous part-time employment from the offset is to place plaintiff in the same position as before; here that was pay for 68 hours (40 hours regular employment plus the 28 hours of part-time employment). Under plaintiff's theory he would receive pay for 83 hours (55 hours plus 40 hours, minus 12 hours); under the government's theory Olsen would receive pay for 68 hours (55 hours plus 40 hours, minus 27 hours). The latter is the correct approach.

### III

### *Right to Retire Now Under Early Retirement Options*

Olsen seeks to be given the chance to retire now under early optional retirement opportunities available to other employees due to major reductions in force in 1975 and 1976,[2] but to be allowed to keep all back pay and other benefits he has received as a result of his reinstatement. Plaintiff's approach to this issue at trial was certainly one of hesitancy. The following colloquy was held between plaintiff's attorney and the court at the beginning of the trial.

MR. BARNES: Your Honor, can I just clarify something that I see?

We didn't go into the issue of retirement, Your Honor because as the plaintiff's order to show cause says, we are really more interested in just information on that.

And plaintiff was really upset with the fact that he couldn't find out about any of this. The plaintiff is really not concerned about retiring now, and it isn't something that's a viable issue as to that respect.

Mainly we were interested in knowing, and we did run into a question on the law on that subject, as to whether he would have to have everything taken away and be retired as of the day the retirement terminated back at the time it was termi-

---

**2.** The appropriate statute, 5 U.S.C. § 8336(d), provides as follows:

(d) An employee who is separated from the service—

(1) involuntarily, except by removal for cause on charges of misconduct or delinquency; or

(2) voluntarily, during a period when the agency in which the employee is serving is undergoing a major reorganization, a major reduction in force, or a major transfer of function, as determined by the Office of Personnel Management, and the employee is

serving in a geographic area designated by the Office;

after completing 25 years of service or after becoming 50 years of age and completing 20 years of service is entitled to an annuity.

We see no merit in Olsen's claim for discontinued service retirement under the "involuntary" portion of the statute, based upon the argument that his job was abolished in July or August 1974 when his duties were combined with the two other production controllers, or in July 1975 when all production scheduling duties were moved to grade 9 positions.

nated, or whether he could retire now and take those benefits.

If I may, would like to just state—

THE COURT: So, retirement issue is out?

MR. BARNES: Yes, Your Honor. It's not a question—we are not trying to retire at this time and get the Court to determine that.

Then another exchange occurred during closing arguments.

THE COURT: Well, I understood you to say last time that he is not going to retire.

MR. BARNES: That's not the plan right now. It's the problem that if the Court gives adverse decision or if it happens that even going back under any circumstances that he has a hostile atmosphere he wants to be able to have an option to retire, is all. That's really the whole sum total of what we are looking at. And it's just a declaratory decision.

THE COURT: Do I have a case of controversy on that, if he is not sure what he is going to do yet? He wants an advisory opinion on that?

MR. BARNES: That's right. We don't have a case of controversy.

THE COURT: Well, how can I give you help on it?

MR. BARNES: I'll just let it go at that.

The court did not rule on the matter at the close of the trial. But when the government attorney suggested that the court rule on it, the judge noted that he understood the retirement issue had been withdrawn. He went on to state, however, that

If it is not withdrawn the Court will rule, one, that Mr. Olsen has not yet indicated whether he seeks to retire. And the Court is of the opinion nonetheless whether he does or does not that the circumstances do not justify his having the right to be placed back into those positions. The evidence doesn't justify it.

You haven't presented evidence or law that would justify my ruling on that point.

Olsen's attorney made no response to the court's statement.

Because the issue was raised, and because we construe the judge's remarks as a ruling on the matter, we will treat it here even though the government contends plaintiff withdrew the issue at trial. Moreover, in spite of the assertions of Olsen's attorney, we think there is a case or controversy here. Olsen is asking for the same opportunity now that he would have had during his wrongful separation from work—the right to choose between continuing work and retiring. Whether he would now retire if given the opportunity to do so, does not affect his right to the choice.

■ Olsen seeks to take advantage of both reinstatement and past retirement opportunities. To allow him the benefits of both would put him in a better position than if he had not been wrongfully separated. This a court cannot do. Since Olsen clearly opted for reinstatement, receiving all back pay and returning to work, he has foreclosed whatever claim he might have had to the early retirement options.

## IV

### Discrimination, Fourteenth Amendment and Other Claims

Olsen raises various other arguments, some of which were not urged before the trial court. We have examined those arguments and see nothing in them warranting reversal.[3] We address only the argument based upon alleged discrimination against him because of his activities as a union leader.

In his initial letter of August 30, 1974, to the Director of Civilian Personnel, Olsen argued that continuing discrimination against him had culminated in the selective abolishment of his job. He tried to raise

---

**3.** Olsen also argues that he should be awarded damages for delay under 28 U.S.C. § 1912. That section principally penalizes a party for taking an appeal simply for purposes of delay. We remind Olsen that he is the appellant.

this issue in the Civil Service Commission (CSC) hearing, but was prevented from fully doing so by the hearing examiner, who found the subject irrelevant to the issue of the case—whether Olsen's retirement was involuntary. In his appeal to the CSC Board of Appeals, Olsen claimed it was error for the hearing examiner not to treat the discrimination issue as a proper and separate issue, and claimed his due process rights were violated because he was prevented from addressing it. Olsen then raised the discrimination issue in his first petition to the district court.

We conclude that any separate claim Olsen may have had for discriminatory job abolishment, even if it was properly raised as an issue in this case, is precluded by the first district court decision. The district court ruled adversely to him on this issue and Olsen did not appeal from it.

The judgment is affirmed.