**Norman SUMMERS**

v.

**The UNITED STATES**

**No. 130–79C.**

United States Court of Claims.

May 6, 1981.

George J. Feulner, Jr., Tucson, Ariz., atty. of record, for plaintiff. Franklin & Feulner, Tucson, Ariz., of counsel.

Marsha D. Peterson, Washington, D. C., with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and KUNZIG and BENNETT, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge.

This civilian pay case is before us on cross-motions for summary judgment. Plaintiff seeks premium overtime pay lost through allegedly "unjustified or unwarranted" personnel actions within the meaning of the Back Pay Act, 5 U.S.C. § 5596 (1976) (amended 1978, 1979, 1980). We hold for plaintiff.

The material facts are not in dispute. Plaintiff is a former employee of the Immigration and Naturalization Service (INS). Effective June 10, 1970, he was assigned to the position of officer in charge of the San Luis Port of Entry, San Luis, Arizona. This position involved overtime work and plaintiff's counsel informs us that premium overtime pay constituted a considerable portion of plaintiff's income. Beginning on February 24, 1972, INS took a number of actions which deprived plaintiff of his overtime pay for which he now sues. These actions fall into three time periods.

First, on February 24, 1972, plaintiff was removed from the officer in charge position and ordered to report to duty in Phoenix, Arizona, to perform clerical duties normally assigned to persons occupying the position of "immigration examiner." Although the officer in charge position was at the GS-12 level and the immigration examiner position was at GS-11, plaintiff continued to receive his full GS-12 base pay. He was informed that as the new position did not involve overtime work, he would no longer receive overtime pay. No adverse action procedures were provided plaintiff on this occasion and the agency did not file a Standard Form 50 (Notification of Personnel Action). Furthermore, INS did not obtain permission to "detail" plaintiff to the GS-11 position.

Shortly after plaintiff's reassignment, he took sick leave and did not report back to work until September 28, 1972. In the interim, plaintiff was notified by INS on April 10, 1972, that it proposed to take adverse action against him in the form of removal. The charges that formed the basis of the action included the improper issuance of service documents to aliens, falsification of government records and failure to maintain required security of documents, among others. Plaintiff was allowed continuances during his sick leave to respond to the proposed action. He formally answered the charges and requested a hearing by letter dated October 18, 1972. To date he has never received a hearing on these charges. However, as indicated below, this proposed action was never carried out. In any event, plaintiff did return to work on September 28, 1972, and was assigned to work as an immigration examiner in Yuma, Arizona.

The second phase of action commenced when plaintiff was indicted in the United States District Court for the District of Arizona on April 4, 1973. The indictment was based on many of the same matters charged in the April 10, 1972, notice of adverse action. By notice dated April 6, 1973, INS proposed to suspend plaintiff indefinitely without pay pending the outcome of the indictment. The reason given for the proposed action was solely the fact of indictment for criminal actions allegedly committed in connection with plaintiff's employment. The underlying actions themselves were not a basis for this action, unlike the proposed action on April 10, 1972. Plaintiff was also placed on administrative leave from April 6 to April 12 because of

the indictment. On April 7 plaintiff requested a hearing with regard to the new proposed action. By letter dated April 9, INS informed plaintiff that he was to be suspended without pay for 30 days starting April 11. The agency hearing concerning the proposed indefinite suspension was held on May 4, 1973. The indefinite suspension without pay was approved. Plaintiff appealed the agency's decision to the Civil Service Commission (CSC) which affirmed the agency by final decision on February 4, 1974.

Plaintiff was actually suspended without pay from April 6, 1973, to November 15, 1974. The indictment was dismissed on November 12, 1974, and plaintiff was ordered to return to duty on November 15. He was reinstated to his position as officer in charge and then was immediately reassigned again to the GS–11 immigration examiner position. His old officer in charge position had been filled by the agency. Again, no adverse action procedures were provided, and no Standard Form 50 was filed. INS determined that the suspension was an unjustified or unwarranted personnel action entitling plaintiff to back pay. Plaintiff was therefore informed that the pay he would have received during the time of his suspension was being computed and would be paid him in accordance with applicable regulations. Plaintiff was paid his GS–12 base pay, but not his premium overtime pay. Plaintiff was also notified that the April 10, 1972, proposed adverse action was being "reactivated." That "reactivated" action was later withdrawn and on March 20, 1975, INS again proposed to remove plaintiff, based largely on the same charges that had supported the April 10, 1972, proposed action. That latest action was rendered moot when plaintiff applied for disability retirement which was approved and became effective November 4, 1975.

In sum, the three periods for which plaintiff now seeks lost overtime compensation are (1) the period September 28, 1972, to April 7, 1973, when he first worked at the immigration examiner position; (2) April 7, 1973, to November 15, 1974, when plaintiff was suspended without pay pending the outcome of the criminal charges; and (3) November 15, 1974, to November 3, 1975, the period from plaintiff's return to duty as an immigration examiner until his retirement.

This action was originally brought in United States District Court for the District of Arizona to seek review of the CSC's February 4, 1974, decision upholding plaintiff's suspension without pay during the pendency of the criminal charges against him. An amended complaint raised other matters, however, and plaintiff was required to exhaust administrative remedies. He did so unsuccessfully before the General Accounting Office and also before the Federal Employee Appeals Authority of the Civil Service Commission. The latter decision was appealed to the CSC Appeals Review Board in Washington, D. C., which denied relief by final decision dated October 13, 1977. It is this later decision we are now called upon to review.

Also, after proceedings began in the district court, the indictment was dismissed against plaintiff, he returned to work and was given back pay ($32,124.16), and eventually he retired. This mooted much of his original claim and left him with only a claim for money damages against the United States in excess of $10,000. The district court transferred the case here. At some point, the record is not clear as to when, plaintiff was also given lost within-grade increases. Plaintiff therefore indicates that all he is now seeking is lost overtime compensation for the three periods described earlier in this opinion and which span the period from September 28, 1972, through November 3, 1975.

Defendant now asserts a counterclaim for the amount paid plaintiff for the suspension period, which covered basic pay, within-grade increases and general pay increases, but not overtime pay.

## I

■ Our scope of review in these civilian pay cases is well settled. We will review

the administrative action only to see if there has been substantial compliance with procedural requirements and whether the action was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or contrary to law. *Boyle v. United States*, 207 Ct.Cl. 27, 34, 515 F.2d 1397, 1401 (1975); *Grover v. United States*, 200 Ct.Cl. 337, 343 (1973); *Morelli v. United States*, 177 Ct.Cl. 848, 858 (1966).

■ We will now consider plaintiff's claim for overtime pay for the first and third periods. These were considered together by the CSC and are treated together in defendant's brief and argument. In both cases, plaintiff was technically occupying a GS–12 officer in charge position, in which he had received considerable overtime pay, but he was reassigned to a GS–11 immigration examiner position which involved no overtime. This reassignment from a GS–12 position to a GS–11 position would appear on its face to be a reduction in rank. A reduction in rank is an adverse action, 5 C.F.R. § 752.201(b)(4) (1977) (current version at 5 C.F.R. § 752.301 (1980)), and so requires that the employee be provided with adverse action procedures, such as notice and an opportunity to reply before the action is taken. 5 C.F.R. § 752.202 (1977) (current version at 5 C.F.R. §§ 752.301, 752.-404 (1980)). In general, where adverse actions are taken by agencies without providing adverse action procedures, the action constitutes an "unjustified or unwarranted personnel action" within the meaning of the Back Pay Act, and entitles the employee to back pay. *Bur v. United States*, 224 Ct.Cl. ——, ——, 621 F.2d 415, 416 (1980); *Shaposka v. United States*, 215 Ct.Cl. 34, 43, 563 F.2d 1013, 1018 (1977); *Gratehouse v. United States*, 206 Ct.Cl. 288, 296, 512 F.2d 1104, 1108 (1975), *cert. denied*, 434 U.S. 955, 98 S.Ct. 480, 54 L.Ed.2d 313 (1977). This is so because of the harmful procedural error and follows whether or not the grounds for the adverse action would be sustained on the merits. *Shaposka v. United States, supra*, 215 Ct.Cl. at 43, 563 F.2d at 1018;

*Gratehouse v. United States, supra*, 206 Ct.Cl. at 296 n.3, 512 F.2d at 1108 n.3.

■ The Government opposes that result in this case and repeats in its arguments the reasoning used by the CSC. The first argument is based on the language of Federal Personnel Manual (FPM) Supp. 752–1, S1–4(a),[1] which provides in part:

> * * * An employee's position assignment may be changed only by an official personnel action. Consequently, a reduction in rank can occur only when the employee is moved from one position to another by an official personnel action. (An official personnel action is an action which requires the issuance of a Standard Form 50 or a form used instead of SF 50.) * * *

The argument is that since no SF 50 was issued in this case, there was no official personnel action and thus no reduction in rank. We disagree. Certainly an agency cannot circumvent the entire statutory and regulatory framework governing adverse actions by simply omitting to fill out a form. We read the above language in the FPM as simply mandating the proper procedure for making an official reduction in rank. It is inapplicable to the case where a de facto reduction in rank has occurred without the proper official steps being taken.

The CSC next reasoned, and the Government argues before us, that the move from the GS–12 position to the GS–11 position was not a reassignment but a detail. Details are covered by FPM 300, Subchapter 8, which provides in part:

> A *detail* is the temporary assignment of an employee to a different position for a specified period, with the employee returning to his regular duties at the end of the detail. Technically, a position is not *filled* by a detail, as the employee continues to be the incumbent of the position from which detailed. [Emphasis in original.] [FPM 300, 8–1.]

1. FPM Chapter 752 was completely revised September 12, 1980. FPM Letter 752–11. Our citation is to the supplement to the prior version before revision.

Therefore, it is argued, since plaintiff was only detailed, he never really occupied the GS–11 position to which he was detailed, but he was still the incumbent of the GS–12 position from which he was detailed. Defendant reasons, therefore, there was no reduction in rank.

The problem with this argument is that there never was a lawful detail. This is revealed by an examination of the FPM provisions governing details. First, FPM 300, 8–3, Purpose of Details, provides:

> a. *When permitted.* Details are intended only for meeting temporary needs of the agency's work program when necessary services cannot be obtained by other desirable or practicable means. * * *

The purpose of moving plaintiff to the GS–11 position was not to meet temporary needs of the agency's work program, but rather, as defendant concedes, because of the serious charges against plaintiff alleging malfeasance in office. The FPM does not allow details for such purposes. Second, FPM 300, 8–3(b)(2), *prohibits* details in excess of 120 days unless prior approval is obtained from the CSC. Defendant admits that *no* prior approval was obtained, and yet plaintiff was kept in the GS–11 position for over 6 months the first time and for almost a year the second time. Third, FPM 300, 8–4(c)(1), requires that details in excess of 30 days be reported on Standard Form 52 or other standard form considered appropriate by the agency. The only such form presented to us is one provided by plaintiff in which the agency represents to the CSC that the second so-called detail of plaintiff began January 8, 1975 (rather than November 15, 1974, as defendant now contends).

■ Defendant's only response to these very damaging arguments goes to the second point: it admits that INS did not get prior permission for the details, but urges that this was harmless error. We do not view this as an error which may have been harmless. Rather, it is just one piece of the weighty evidence which convinces us that there simply were no details here, but rather bungled reassignments. The CSC's

conclusion that these were details was legal error.

We wish to emphasize that we do not mean to restrict an agency's power to reassign its employees in these circumstances. It is important for an agency to be able to reassign an employee who is under investigation for serious charges of possible misconduct in office. We only hold that a reassignment in such instances, as in all instances, must be done properly. In this case, "proper" means that where an agency reduces the employee's rank by the reassignment, there must be compliance with adverse action procedural requirements.

Defendant also cites two cases for our consideration, *Triponi v. United States*, 224 Ct.Cl. ——, 633 F.2d 933 (1980), and *Reynaud v. United States*, Ct.Cl. No. 444–78 (order entered September 26, 1980). Both are distinguishable. *Triponi* involved a case where an employee lost premium pay for administratively uncontrollable overtime because of a valid reassignment that did not involve a reduction in rank. The court held that the loss of such overtime did not constitute a reduction in *pay* for adverse action purposes. In the instant case, there was no valid reassignment and there was a reduction in *rank* which constituted an adverse action in its own right. The *Reynaud* case also involved an employee seeking lost premium pay for administratively uncontrollable overtime. He lost overtime pay at one point when he was validly reassigned from an overtime to a non-overtime position pending the disposition of criminal charges against him. Again the distinguishing feature was that in *Reynaud* the reassignment was *valid* and not unlawful, as in this case. There were no procedural improprieties at that point in *Reynaud.* At a different point, where the court found that Reynaud was improperly precluded from returning to his overtime position, recovery of overtime pay was permitted. Hence, neither case benefits defendant's position here.

In sum, as to the first and third periods, the CSC is reversed. Plaintiff was not detailed but was reduced in rank without being afforded adverse action procedures. He

is, therefore, entitled to recover lost overtime compensation for these periods.

## II

The other period for our consideration is the suspension period. INS has determined that the suspension was an unjustified and unwarranted personnel action. That determination triggers the entitlement under the Back Pay Act. The agency gave plaintiff his GS–12 base pay for the period, but refused to give him overtime pay. It is not disputed that a recovery under the Back Pay Act includes premium overtime pay "the employee would have received had it not been for the unjustified or unwarranted personnel action." 5 C.F.R. § 550.804(b)(1) (1977) (current version at 5 C.F.R. § 550.-802(e) (1980)); FPM 550, 8–5(b). Defendant must therefore show why plaintiff should not recover such overtime pay in this case.

The Government's first argument does not form a part of the CSC's opinion. The Government points out that the GS–11 position did not involve overtime work. It then argues that plaintiff was validly detailed to the GS–11 position both before and after the suspension. Therefore, the argument continues, throughout the entire period plaintiff was at all times properly assigned to duties which did not involve overtime. Since the Back Pay Act would allow recovery only for pay plaintiff would have received but for the suspension, defendant concludes there can be no recovery here since plaintiff would not have earned any overtime compensation.

The Government is apparently unaware of its inconsistency here. It argues that plaintiff was in the GS–11 position. Yet, as to the first and third periods, the Government strenuously insists that there was no reduction in rank because plaintiff *never* occupied the GS–11 position but remained in the GS–12 position at all times. In any event, we have already rejected above the contention that plaintiff was ever validly detailed to the GS–11 position. That is enough to dispose of this argument entirely.

The CSC gave another reason for denying relief, and defendant repeats it in its argument before us. The argument relies on our decision in *Jankowitz v. United States*, 209 Ct.Cl. 489, 533 F.2d 538 (1976). Defendant contends that *Jankowitz* holds that a suspension based solely on the fact of indictment based on malfeasance in office does *not* constitute an unjustified or unwarranted personnel action and so does not *permit* an award of back pay.

Defendant's analysis misreads our opinion. In the *Jankowitz* case, the employee had been suspended when he was indicted for criminal acts alleged to have been committed within the course of his employment. Later he was acquitted and the agency reinstated him but refused to pay him for the suspension period. He sued here for back pay. He contended that his suspension was procedurally defective since it was based solely on the fact of indictment rather than the facts underlying the indictment. Therefore, he argued, his acquittal retroactively invalidated the basis for the suspension. The court found that the agency's action was specifically permitted by the FPM. The court then held, "Since we find that the Government in fact followed all applicable procedural recommendations and safeguards in the FPM, we do not agree that plaintiff's indefinite suspension without pay was either unjustified or unwarranted." 209 Ct.Cl. at 498–99, 533 F.2d at 544. Given our narrow standard of review, that means only that the agency's action in that case was not arbitrary, capricious, or contrary to law. It does *not* mean that if the agency *had* given Jankowitz back pay for the suspension period that *that* action would necessarily have been reversible. This is supported by the applicable regulation which states:

To be unjustified or unwarranted, a personnel action must be determined to be improper or erroneous on the basis of either substantive or procedural defects after consideration of the equitable, legal, and procedural elements involved in the personnel action. [5 C.F.R. § 550.803(d) (1977) (current version at 5 C.F.R. § 550.-803(e) (1980).]

Given that regulation, the agencies have a certain amount of discretion to determine that an employee has undergone an unjustified or unwarranted personnel action even though a court would not require such a determination. We hold that the exercise of that discretion here was made reasonably and without reversible error.

That disposes of the reasoning of the CSC and of the Government's final argument on this issue. As the Government's counterclaim is based simply on the theory that *Jankowitz* prohibited the payment to plaintiff of any compensation for the suspension period, the counterclaim is denied on the same reasoning.

We note as a final point that although the agency has some discretion in the first instance in making the determination as to whether an employee has undergone an unjustified or unwarranted personnel action, once that determination is made, there is no discretion in determining the amount of the back pay recovery. The calculations are mandated by the statute and the regulations thereunder. As noted above, those calculations include amounts for premium overtime pay. In his brief, plaintiff has set forth the precise amount of overtime compensation to which he deems himself entitled. It amounts to $28,362.36. This figure is based largely on calculations made by INS as to how much plaintiff would receive if he were entitled to recover. Defendant does not controvert this amount in its brief and at oral argument defendant's counsel conceded that this amount was correct. It will therefore be unnecessary to remand to the trial division to determine the proper amount of recovery.

In sum, after careful consideration of the record, briefs, exhibits, and oral argument, we hold that plaintiff underwent unjustified and unwarranted personnel actions for all three periods, lasting from September 28, 1972, to November 3, 1975. He is entitled to recover overtime compensation for that period. Plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied. Defendant's counterclaim is dismissed. The amount of recovery having been agreed upon by the parties, judgment is hereby entered in the amount of twenty-eight thousand, three hundred sixty-two dollars, and thirty-six cents ($28,362.36).