**George E. McGRATH, Jr.**

v.

**The UNITED STATES.**

No. 87–81C.

United States Claims Court.

Dec. 1, 1982.

Richard L. Swick, Washington, D.C., for plaintiff.

Gerald Elston, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant; Albert T. Berry, Dept. of Agriculture, Washington, D.C., of counsel.

OPINION

SETO, Judge:

This civilian pay case comes to this court on cross-motions for summary judgment regarding the challenge of George E. McGrath, Jr. (McGrath), to an adverse ruling by the Federal Employee Appeals Authority (FEAA). The issues have been briefed and oral argument has taken place.

George McGrath was a GS–13 writer for the Soil Conservation Service (SCS) of the Department of Agriculture. McGrath began his writing career with the Government in January 1967, as a GS–9. He was promoted to GS–11 on October 1, 1967, and to a GS–12 shortly thereafter. McGrath was a writer throughout his Government career. During the first 6 months of 1976, several charges of poor performance were levied against McGrath. Of the 13 work assignments given to McGrath during that period, the SCS cited 11 of these assignments to be of such poor writing quality that dismissal was justified.

On July 16, 1976, McGrath was given advance notice of a proposal to remove him from the SCS. He was removed on October 8, 1976. The FEAA, after a hearing, issued its opinion on September 10, 1977, affirming 7[1] of the 13 charges. McGrath now seeks review by this court, challenging the decision of the FEAA and the severity of the penalty. We uphold the administrative decision.

■ This court's standard of review in civilian pay cases is limited to determining

---

**1.** The seven charges affirmed of poor performance were:

(1) Failing to prepare, within one-half day, a one-page news story which should have been ready for release with little or no editing;

(2) Failing to write a speech, within one week, which should have been presented with little or no editing;

(3) Failing to prepare a routine eight-page speech in a week or less, which should have been ready to be presented with little editing;

whether " * * * the final administrative appellate decision was in conformance with the Constitution, statutes, and regulations, was not arbitrary or capricious or taken in bad faith, and was supported by substantial evidence." *Giles v. United States,* 213 Ct.Cl. 602, 605, 553 F.2d 647, 649 (1977); *Moss v. United States,* Ct.Cl. No. 206–80C (Order entered January 29, 1982); *Summers v. United States,* 227 Ct.Cl. 353, 358, 648 F.2d 1324, 1327 (1981); *Boyle v. United States,* 207 Ct.Cl. 27, 515 F.2d 1397 (1975); *Morelli v. United States,* 177 Ct.Cl. 848 (1966).

Plaintiff in the instant case, concedes that the FEAA followed all proper procedures. Plaintiff has, however, challenged the substantiality of the evidence supporting his removal by the SCS. Furthermore, he contends that removal was too severe a penalty given the subjective evaluation of his performance.

■ All of the charges upheld by the FEAA concerned plaintiff's unsatisfactory performance. Specifically, plaintiff failed to meet writing assignment deadlines, to follow his supervisor's instructions, and to meet the requirements of a GS–13 writing position. The FEAA considered evidence of McGrath's writing,[2] critiques given to McGrath at the time of his performance, and testimony as to what would have been acceptable performance of one in McGrath's position. Thus, FEAA had substantial evidence to support its decision that McGrath did not fulfill the requirements of his job.

Plaintiff asserts that not all material evidence was presented to the FEAA, namely, that the testimony of Mr. Finley Parks, a co-worker of McGrath, was not taken. Parks submitted an affidavit, in plaintiff's motion for summary judgment, in support of McGrath. Parks' statements are hearsay, and not based on firsthand knowledge. Two witnesses with testimonies similar to Parks were heard by the FEAA and were deemed unpersuasive for having no firsthand knowledge. Therefore, even if the FEAA had been afforded access to Parks' redundant testimony, it would not have been persuaded to reverse its decision.

Plaintiff, in addition, contends that the SCS failed to show a nexus between the poor-writing charges alleged against him and the efficiency of SCS. Moreover, plaintiff asserts that he never repudiated his supervisor's guidance and that he did submit drafts which could be used by the SCS. Plaintiff adduces that the charges in question arise merely because of different writing styles, *i.e.,* plaintiff's vis-a-vis his supervisor's.

Plaintiff's responsibilities included not only formulating ideas for a particular project, but also writing the material in a manner requiring minimum revision. It is not enough to acknowledge that plaintiff put forth his best efforts to complete his assignments; plaintiff was required to complete his assignments to the satisfaction of his supervisors.

We find it proper for an agency to presume that there is a nexus between the efficiency of SCS and conduct which directly relates to its employee's work performance, *i.e.,* poor writing ability. *Staton v. United States,* Ct.Cl. No. 301–80C (Order

(4) Failing, in preparing articles for "Current Developments," to implement known instructions, to correctly report supplied information, and to follow established styles;
(5) Failing to meet deadlines, by submitting written material a week late;
(6) Failing to turn in writing projects which should have been submitted on time, ready for publication, and fully completed; and,
(7) Failing to discover answers to plaintiff's own questions, to rewrite manuscripts as instructed and to turn in manuscripts on deadline.

**2.** For example, on March 23, 1976, McGrath was assigned to write an 8-page speech due on March 31. The first draft took 2 weeks for McGrath to complete and was returned to McGrath as unacceptable. The second draft was turned in on the assigned date, April 15, but still contained ambiguous sentences and poor organization. The third draft, due on April 22, was still crudely written. Plaintiff's supervisor was then forced to take over the preparation of the final draft in order to finish the speech in time for its presentation. On each draft, McGrath's supervisor clearly indicated the problems which needed correction, specifically poor grammar and poor organization of the drafts.

entered July 24, 1981). In the instant case, the nexus between plaintiff's poor writing ability and the efficiency of the agency, *e.g.*, SCS, is "obvious on the face of the facts." *Phillips v. Bergland,* 586 F.2d 1007 (4th Cir.1978). SCS submitted evidence that the agency was required to have other employees edit and rewrite the work product of the plaintiff. Plaintiff's supervisor considered McGrath's work unacceptable, since substantial rewriting was required, as opposed to mere stylistic changes. Moreover, the fact that plaintiff's supervisor disapproved of plaintiff's work, dispels plaintiff's contention that he followed his supervisor's writing instructions.

■ Finally, plaintiff asserts that removal was too severe a penalty. SCS cites persuasive cases which hold that "the measure of the penalty is within the discretion of the agency" unless there is an abuse of discretion. *Butz v. Glover Livestock Commission,* 411 U.S. 182, 187–188, 93 S.Ct. 1455, 1458–1459, 36 L.Ed.2d 142 (1973); *Harris v. United States,*[3] Ct.Cl. No. 5–80C (Order dated June 1, 1981); *Rifkin v. United States,* 209 Ct.Cl. 566 (1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 545 (1977). Plaintiff cites cases which are rare exceptions to the general rule of leaving discretion with the agency. In each of these cases, the charges against the Government employee bordered on being trivial. Such is not the case here; and therefore these cases are inapposite.

Plaintiff argues that a demotion, rather than a dismissal, is appropriate pursuant to Federal Personnel Manual Supplement 752–1, subparagraph 53–26(4).

The Federal Personnel Manual Supplement (FPMS) states: " * * * what constitutes a proper or valid cause is essentially for the agency to decide. Section 01.3(d) of Executive Order 9830 makes agencies responsible for removing, demoting, or reassigning any employee whose conduct or ca-

pacity is such that one of these actions will 'promote the efficiency of the service.' " *FPM Supp.* 752–1, § 3–1(a) (1976).

The sole case proffered by plaintiff pursuant to the FPMS, subparagraph 53–26(4) hereinabove mentioned, involved the reversal of a removal for inefficiency after promotion; however, it only involved a *nonprofessional* clerical lower grade-level Federal employee, and therefore is inapposite.

An employee had worked for a number of years in grade GS–2 and grade GS–3 clerical positions, requiring incidental and minimal general typing, but no typing of correspondence. Her work performance in the position was satisfactory. She was promoted, under the agency's promotion program, to a grade GS–4 clerk-typist position which included among its duties the typing of correspondence. Soon after the promotion, the official who selected her for the position became dissatisfied with her work performance, including her typing of correspondence. She was subsequently removed for inefficiency. Upon review, the Commission held that, in consideration of all the facts and circumstances—particularly the employee's record of satisfactory service in grade GS–3 clerical positions requiring only incidental typing and the presence of vacant clerical positions in grade GS–3 to which she could have been demoted and which she was willing to accept—the agency had acted arbitrarily in removing her from the service and, therefore, the removal action was improper.

Aside from the above scenario being inapposite, the cited Manual is *not* a regulation and therefore *not* mandatory upon the court. The above-cited scenario does not involve a high level professional employee whose duties are substantive, rather than clerical. Nor is the SCS required to demote plaintiff to his level of competence, instead of removing him. *Grover v. United States,* 200 Ct.Cl. 337, 353 (1973). Moreover, plain-

---

**3.** The *Harris* case involves facts similar to the instant case. Harris was employed by the Postal Service as a writer from 1962 to 1977. His duties included drafting speeches and correspondence. Harris was removed on April 7, 1977, due to his failure to meet the performance standards of his job. The court in *Harris* upheld the administrative decision that removal was proper.

tiff's demotion to a GS–12 writer would result in plaintiff's assuming substantially the same writing duties he had as a GS–13 writer. Whether he is classified as a GS–13, GS–12 or lower GS rating, he would still be in a position in which his primary responsibility was to write. Since plaintiff apparently can no longer perform his primary duty, dismissal is an appropriate agency action.

Finally, the FEAA had sufficient reasons to support its decision of removal. The documentation of plaintiff's writing inability was substantial, as well as the evidence of the additional writing needed to improve plaintiff's drafts.

We conclude that there are no contested issues of material facts and thus, summary judgment is appropriate. Moreover, for the above-stated reasons, we conclude that the FEAA decision to uphold removal is supported by substantial evidence and was neither arbitrary nor capricious. Therefore, we affirm the administrative decision.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is granted and the complaint is to be dismissed.