**Daniel J. WELLS, et al.,
Plaintiffs-Appellants,**

*v.*

**FEDERAL AVIATION ADMINISTRATION, et al., Defendants-Appellees.**

**No. 84–8073.**

United States Court of Appeals,
Eleventh Circuit.

March 19, 1985.

---

Dana E. McDonald, Edgar A. Neely, III, Atlanta, Ga., for plaintiffs-appellants.

Sharon D. Stokes, Asst. U.S. Atty., Atlanta, Ga., James W. Whitlow, F.A.A., Washington, D.C., for defendants-appellees.

Before HENDERSON and HATCHETT, Circuit Judges, and NICHOLS,* Senior Circuit Judge.

NICHOLS, Senior Circuit Judge:

This is an appeal from the summary judgment of the United States District Court for the Northern District of Georgia. The district court dismissed appellants' claims, *inter alia*, for back pay and attorney's fees under the Back Pay Act (BPA), for fees and costs under the Equal Access to Justice Act (EAJA), and for damages against individual government employees under the fifth amendment to the United States Constitution. This court has jurisdiction under 28 U.S.C. § 1291. We *affirm*.

### Facts

Appellants are Federal Aviation Administration (FAA) pilots of flight inspection aircraft. On March 19, 1981, appellants' Air Transport Pilot (ATP) certificates were revoked by emergency order of the Administrator of the FAA, pursuant to 49 U.S.C. § 1429, because their plane had been rolled 360° without authorization. These certificates were not necessary for appellants' continued employment. The next day, however, appellants were released from flight duties pending resolution of the emergency suspension. Appellants received their full pay while thus grounded, but lost the opportunity to accrue flight duty overtime pay.

The pilots appealed the revocation of their certificates to the National Transportation Safety Board (NTSB), in accordance with 49 C.F.R. § 821 *et seq.* The hearings were held on April 29, 30, and May 1 and 4, 1981, and the ATP certificates were restored following a NTSB ruling favorable to the pilots. While they had been initially informed that they were to be placed on on-duty status during their attendance at the hearing, after the hearings the pilots were informed by letter that they were not entitled to on-duty status and were to choose an annual leave option. If no option was chosen, they were to be deemed absent without leave (AWOL). Appellants chose not to select an annual leave option and were deemed AWOL.

### Issues

A. Did the district court err in concluding that the pilots could not recover under 5 U.S.C. § 5596(b)(1) of BPA for on-duty status pay lost and for attorney's fees?

B. Did the district court err in denying recovery of attorney's fees under EAJA, 28 U.S.C. § 2412?

* Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

C. Did the district court err in concluding that appellants could not maintain a fifth amendment due process claim against FAA employees in their individual capacities for an unconstitutional deprivation of property?

### Discussion

In reviewing the district court's decision granting summary judgment, which evolved from appellees-defendants' motion to dismiss the complaint, we note that appellants receive the benefit of all applicable presumptions, inferences, and intendments and that summary judgment is appropriate only when there is no genuine issue of material fact. *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir.1983). We find that there is no genuine issue of material fact, and affirm the district court's application of the undisputed facts to the law.

### A. *Back Pay Act Claims*

5 U.S.C. § 5596(b) states in pertinent part:

> An employee of an agency who, on the basis of a timely appeal or an administrative determination * * * is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an *unjustified or unwarranted personnel action* which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—
>
> (A) is entitled, on correction of the personnel action, to receive * * *
>
> (i) an amount of pay equal to all or part of the pay, allowances, or differentials * * * which the employee normally would have earned or received * * *.
>
> (ii) reasonable attorney fees related to the personnel action * * *.

■ The purpose of this statute is to put an employee who was the victim of an unjustified or unwarranted personnel action in the same position as he would have been had the erroneous action not occurred. *Bush v. Lucas*, 462 U.S. 367, 385–86, 103 S.Ct. 2404, 2415, 76 L.Ed.2d 648 (1983). *See United States v. Testan*, 424 U.S. 392, 405, 96 S.Ct. 948, 956, 47 L.Ed.2d 114 (1976); *Morris v. United States*, 595 F.2d 591, 594, 219 Ct.Cl. 452 (1979). "[A]n employee is entitled to be made whole whenever an erroneous personnel action which has terminated or reduced his compensation is corrected by appropriate authority." S.Rep. No. 1062, 89th Cong., 2d Sess. 1, *reprinted in* 1966 U.S.Code Cong. & Ad. News 2097.

■ To receive compensation under the Back Pay Act, an employee must show that (1) he has undergone an unjustified or unwarranted personnel action as determined by an appropriate authority, and (2) the action resulted in a withdrawal or reduction of all or part of the employee's pay, allowances, or differentials. *Donovan v. United States*, 580 F.2d 1203 (3d Cir.1978). We conclude that the facts do not satisfy the stated requirements.

The revocation of the pilots' ATP certificates was not a personnel action, but an enforcement sanction. Section 1429 of 49 U.S.C. provides that the Administrator of the FAA may reexamine any civil airman and if, as the result of the reexamination or any other investigation by the Administrator, he determines that the safety of air commerce or the public interest requires, he may revoke a certificate. Airman certificates, which are issued under 49 U.S.C. § 1422, are available to *any person* who has the proper qualifications. Attainment of a certificate is not similar to passing an agency employment examination, but is analogous to receiving a license to drive a motor vehicle. The revocation of an FAA pilot's certificate is separate and distinct from his employment relationship, just as a Motor Vehicle Bureau employee's loss of a driver's license for violating traffic laws would be separate from any employment relationship with the Motor Vehicle Bureau. Additionally, the certificate is not a requirement of employment with the FAA, but is necessary only for flying *commer-*

*cial* aircraft. As the action is taken based on safety requirements and without regard to employment status, it is not a personnel action.

Appellants' request for attorney's fees incurred in appealing the revocation to the NTSB therefore must fail. The pilots appealed to the NTSB to remove an enforcement sanction, just as a pilot not employed by the FAA would. As the appeal was unrelated to any personnel action, attorney's fees incurred during the appeal fall outside the scope of § 5596.

Appellants contend, additionally, that the removal from flight duties and the placement on AWOL status were unjustified personnel actions, and that the pilots could receive attorney's fees incurred in appealing the certificate revocation because the NTSB appeal "related to" these unjustified personnel actions. The district court disagreed, as do we.

Under the BPA, an employee is entitled to recover pay which he would have earned had an unjustified or unwarranted personnel action not occurred. Specifically, under 5 C.F.R. § 530.802(c) (1980), the relevant regulation at the time, an unjustified or unwarranted personnel action is defined as an act which is found to violate the requirements of a *nondiscretionary* provision and "thereby resulted in a withdrawal, reduction, or denial of all or any part of the pay, allowances, or differentials * * * *otherwise due an employee.*" (Emphasis supplied.) Pay, as defined in 5 C.F.R. § 550.802(e) (1980), is—

> basic pay as defined under the applicable pay system; * * * *premium pay* (including overtime, night, holiday, standby, administratively uncontrollable overtime, and Sunday pay) * * *.

Thus the regulations clearly provide for the inclusion of overtime pay as pay under the Back Pay Act in appropriate cases. *See also Summers v. United States,* 648 F.2d 1324, 1329, 227 Ct.Cl. 353 (1981).

■ For overtime pay to be recovered, however, it must be "otherwise due an employee." *Id.* at § 550.802(c). Having considered the record in detail, we conclude that the district court was correct in its determination that the overtime was not otherwise due. Affidavits submitted by plaintiffs indicate that they did not always receive overtime on flight inspection duties. Assignment of overtime flight inspection duties was discretionary, according to applicable regulations, and based on circumstances. Since it is undisputed in the record that overtime was discretionary, the district court was correct to determine the claim as it did. Applicable regulations indicate that loss of *discretionary* overtime is not a pay loss. Under the BPA, where a personnel action results in no pay loss, the personnel action may not be deemed unjustified or unwarranted. The removal from flight inspection duties was such a personnel action. Since the pay allegedly lost was not otherwise due, the attorney's fee request does not satisfy § 550.806(a).

Nor can appellants prevail on the BPA claim for on-duty status pay. Appellants claim that the agency violated a *nondiscretionary* policy, and thus an unjustified and unwarranted personnel action occurred under 5 C.F.R. § 550.802(c) (1980), as the agency violated FAA Order 3600.4 ¶ 74(a) which states:

> OTHER ABSENCES FROM DUTY. Absences which have been approved for the following reasons are considered to be duty status rather than excused absences:
>
> a. A witness before an official agency board or committee or a designated member of the board or committee.
>
> * * * * * *
>
> c. Time allowed by an employee and his representative in connection with a grievance or appeal during regularly scheduled tours of duty only.

■ This regulation is ambiguous in that 74(a) does not seem to distinguish between witnesses appearing on behalf of the agency and those appearing for respondents. Another provision, ¶ 86(c), indicates that only those acting on the agency's behalf are to be given on-duty status. The agency interprets these regulations to mean that

¶ 74(a) only applies to FAA witnesses. An agency's interpretation of its own regulation is granted substantial deference. *See, e.g., United States v. Rutherford,* 442 U.S. 544, 553, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1978). The agency's interpretation that its employees are to be paid only when acting on the government's request is not unreasonable. In any event, a person prosecuting a claim on his own behalf may be a witness and yet his presence may not be wholly or primarily to aid the tribunal with his testimony.

■ The claim here is quite different from that found in *Davis v. Bolger,* 496 F.Supp. 559 (D.D.C.1980), where the district court held that Title VII required that an employee and his witnesses be compensated for testifying, to the same extent as an agency's witnesses are, in an employment discrimination case. In *Davis,* the court premised its decision on the purpose of the Civil Rights Act of 1964 and the Equal Employment Opportunity Act of 1972. *Id.* at 564. The court distinguished Title VII cases from agency actions in general. The pilots here fail to provide statute or legislative history to show that the agency's interpretation of its regulation is inapposite to any congressional intent. Therefore, we find that agency regulations do not mandate that a respondent in a NTSB hearing unrelated to employment, indeed one who never was a witness, must be provided on-duty status time. Since no unjustified or unwarranted personnel action occurred, no attorney's fees may be recovered under § 5596.

### B. *The Equal Access to Justice Act Claims*

■ Appellants claimed below that they were entitled to reasonable attorney's fees under the EAJA, 28 U.S.C. § 2412(d)(3). The Act applies "to any adversary adjudication * * * and any civil action or adversary adjudication described in [28 U.S.C. § 2412] which is *pending on,* or commenced on or after [October 1, 1981]." Pub.L. No. 96–481, 94 Stat. 2330 (1980). The fifth circuit,

unit B, has held under EAJA that an appeal to a court from an agency action is not a mere continuation of the agency action itself. *S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Commission,* 672 F.2d 426, 428 (5th Cir. 1982). In *S & H Riggers,* as here, the agency action was not pending on October 1, 1981, for the case was on appeal. Therefore, attorney's fees related to the NTSB hearing are not recoverable under the EAJA.

### C. *The Bivens Claims*

■ In the absence of recovery of attorney's fees and lost pay under the BPA or EAJA, appellants desire to proceed against their supervisors in their individual capacities for alleged deprivation of property, their ATP certificates, without due process as required by the fifth amendment. Appellants rely on *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), where the Supreme Court recognized a federal right of action against federal agents arising under the fourth amendment. *Bivens* actions are restricted to the vindication of the constitutional rights of a victim only when no equally effective remedy is available. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1976).

■ In *Bush v. Lucas, supra,* the Supreme Court held that a federal employee could not assert a *Bivens* action alleging that his supervisor violated the employee's first amendment rights because of the complete and apparently preemptive character of the civil service laws. The analysis in *Bush* applies to cases arising under the fifth amendment as well. *Gleason v. Malcom,* 718 F.2d 1044, 1048 (11th Cir.1983). In analyzing the possibility of a *Bivens* action arising from the federal employment context, the Court advised that the judiciary must pay special heed to any special factors counseling hesitation before authorizing a new kind of federal litigation.

*Bush,* 462 U.S. at 378, 103 S.Ct. at 2411. We should never suppose that in providing more effective remedies for some grievances than for others, the Congress intended that those grievants who were left in the second group were really meant to be better off than those in the first. *Cf. United States v. Connolly,* 716 F.2d 882, 886 (Fed.Cir.1983).

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff.
>
> \* \* \* \* \* \*
>
> Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service.

*Bush,* 462 U.S. at 388, 103 S.Ct. at 2416. Here, as in *Bush,* the relationship between the Federal Government agency supervisors and other Civil Service employees is a "special factor." Appellants had available to them various administrative arenas in which to assert their claims. Although they have attempted some avenues of administrative recourse, they have waived others. "The purpose of denying a private cause of action to federal employees is to ensure that they do not bypass comprehensive and carefully balanced statutory and administrative remedies in order to seek direct judicial relief." *Gleason,* 718 F.2d at 1048. Appellants' *Bivens* claims must fail.

### Conclusion

The judgment of the district court is AFFIRMED.