Wesley D. MITCHELL, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 96–CV–968.

District of Columbia Court of Appeals.

Submitted Feb. 18, 1999.

Decided Aug. 19, 1999.

Jo Anne Robinson, Interim Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel, and Sheila Kaplan, Assistant Corporation Counsel, were on the brief for appellee.

Before STEADMAN and FARRELL, Associate Judges and KERN, Senior Judge.

FARRELL, Associate Judge:

Appellant was employed at the relevant time by the Department of Human Services ("DHS"). He filed an administrative complaint seeking payment for 21.5 hours of overtime he was scheduled to work but which DHS had cancelled, and for additional overtime for which he would have been eligible except for what he asserted was an unwarranted employment action by DHS. His entitlement to these payments depended upon application of the Federal Back Pay Act ("BPA").[1] Appellant also sought restoration of his opportunity to work future overtime. The Office of Employee Appeals ("OEA") ruled that, in the circumstances of this case, the overtime appellant had lost could not be recovered under the BPA. At the same time, it provided prospective relief by ordering that the restriction on overtime be lifted, while noting that the agency was not required to approve future overtime for appellant if it had a "legitimate management reason." The Superior Court, on further appeal, sustained OEA's determinations. In this court, appellant challenges the denial of back pay. We uphold the trial court's decision except that we remand for further consideration of appellant's claim for back pay as it relates solely to the scheduled 21.5 hours.

Wesley D. Mitchell filed a brief pro se.

---

1. *See* 5 U.S.C. § 5596(b)(1) (1994). The BPA applied to appellant's claim because he had been hired before January 1, 1980. *See Zenian v. District of Columbia Office of Employee Appeals,* 598 A.2d 1161, 1163–65 (D.C.1991); *District of Columbia v. Hunt,* 520 A.2d 300, 303–04 (D.C.1987). Pursuant to D.C.Code § 1–633.2(a)(5)(G) (1999), the BPA has been superseded in the District of Columbia by the Comprehensive Merit Personnel Act, D.C.Code §§ 1–601.1 to 1–637.2 (1999).

## I.

On March 5, 1987, DHS informed appellant, a Recreation Program Specialist at the District's Oak Hill Youth Facility, that he was restricted from working any additional overtime. The agency also cancelled 21.5 hours of overtime for which he had already been approved and scheduled. The reasons DHS later asserted for the action were that appellant had not been working diligently during his normal forty-hour work week, and that the agency intended to shift overtime to employees in lower grade levels than appellant. Following appellant's administrative complaint, an OEA examiner conducted a hearing in May 1991. She found an "absence of proof that management [had] reasonably exercised its discretion [to limit overtime] for a legitimate reason." However, while thus concluding that DHS's March 5, 1987 actions were "arbitrary and capricious," the examiner determined that the BPA afforded appellant no entitlement to back pay because he had not suffered an actual loss of pay, only the lost opportunity to earn additional pay.

On review, the full OEA Board did not disturb the examiner's finding that DHS had "abused its discretion by barring [appellant] from working overtime," but agreed that the BPA provided him no entitlement to back pay. On further appeal, the Superior Court initially remanded the case to OEA because it found the record insufficiently developed as to the reasons why the overtime had been curtailed. On remand, the examiner made findings somewhat in tension with her earlier determination of arbitrary and capricious action. In particular, she found that appellant's supervisor's "belief that [appellant] did not work during the [normal] forty-hour week was the specific reason for the overtime restriction." The examiner sent these findings directly to the Superior Court, which issued a written opinion on May 15, 1996. Disregarding the apparent conflict in the examiner's successive factual determinations, the court framed "the narrow legal issue [as] whether the OEA erred as a matter of law when it sustained the hearing examiner's conclusion that the Back Pay Act did not provide a monetary remedy for the wrongful overtime restriction in this case because the restriction did not result in a withdrawal or reduction in [appellant's] pay." The court concluded:

> [W]hile the Back Pay Act does provide a monetary remedy for the wrongful restriction of overtime pay[ ] which is otherwise due a worker by contract, rule, or regulation, ... no such compensatory remedy is recoverable as *pay* under the Act where the authority to schedule overtime to a particular worker is committed to the sole discretion of the Agency. [Emphasis in original.]

## II.

We sustain OEA's conclusion that appellant could not recover under the BPA for the denial of unscheduled future overtime. "To receive compensation under the [BPA], an employee must show that (1) he has undergone an unjustified or unwarranted personnel action as determined by an appropriate authority, and (2) the action resulted in a withdrawal or reduction of all or part of the employee's pay, allowances, or differentials." *Wells v. Federal Aviation Admin.,* 755 F.2d 804, 807 (11th Cir.1985); *see* 5 U.S.C. § 5596(b) (1994). Such "pay" may include overtime pay wrongfully withheld. *Id.* at 808; *see also Summers v. United States,* 227 Ct.Cl. 353, 648 F.2d 1324, 1329 (1981). However, courts have consistently held the BPA to be " 'merely derivative in application; it is not itself a jurisdictional statute.' Unless *some other provision of law commands payment of money to the employee* for the 'unjustified or unwarranted personnel action,' the Back Pay Act is inapplicable." *Spagnola v. Stockman,* 732 F.2d 908, 912 (Fed.Cir.1984) (emphasis added) (quoting *United States v. Connolly,* 716 F.2d 882,

887 (Fed.Cir.1983)).[2] In *Spagnola*, the court held that:

> there has been ... no such provision of law mandating payment of ... money to the appellant, and the Back Pay Act itself cannot fill that gap. Consistently with that understanding of the law, the 1978 amendment [to the Act which defined "unjustified or unwarranted personnel action" broadly to include "the ... failure to ... confer a benefit"] was *not* designed to provide payment for all actions which should or might well have been taken, but only for those payments or benefits which were *required* by law (a statute or regulation).

*Id.* (emphasis in original). *See also Brown v. Secretary of the Army*, 287 U.S.App. D.C. 8, 14 n. 4, 918 F.2d 214, 220 n. 4 (1990) ("[I]n referring to personnel action that is 'unjustified or unwarranted,' the legislators meant 'acts of commission as well as omission with respect to [a] *nondiscretionary* provision of law, Executive order, regulation, or collective bargaining agreement'" (citing S. REP. No. 969, 95th Cong., 2d Sess. 115 (1978) U.S.Code Cong. & Admin. News 1978, 2723, 2837)(emphasis in *Brown*); *Wells*, 755 F.2d at 809 (Because no regulation required on-duty status pay, "no unjustified or unwarranted personnel action occurred."))

*Wells, supra,* applied this reasoning to a denial of overtime pay to a federal flight inspector. After pointing out that the applicable regulation implementing the BPA defined an unjustified personnel action as an act "found to violate the requirements of a *nondiscretionary* provision," " 'thereby result[ing] in a ... denial of ... pay ... *otherwise due an employee,*' " 755 F.2d at 808 (quoting 5 C.F.R. § 550.802(c) (1980)) (emphasis in *Wells* ), the court found that:

> [a]ssignment of overtime flight inspection duties was discretionary, according to applicable regulations, and based on circumstances. Since it is undisputed in the record that overtime was discretionary, the district court was correct to [deny] the claim .... Applicable regulations indicate that loss of *discretionary* overtime is not a pay loss. Under the BPA, where a personnel action results in no pay loss, the personnel action may not be deemed unjustified or unwarranted. The removal from flight inspection duties was such a personnel action.

*Id.*[3] (emphasis in original).

▮ Appellant has never alleged that the elimination of his future overtime eligibility violated a statute, administrative regulation, or collective bargaining agreement. He refers only to the District Personnel Manual ("DPM"), but, as the trial

---

2. As we have done in related contexts, *see Dano Resource Recovery, Inc. v. District of Columbia*, 620 A.2d 1346 (D.C.1993), we give special respect to the Federal Circuit and the former Court of Claims, "which have particular expertise in this area." *Id.* at 1351.

3. *See also Connolly*, 716 F.2d at 887 ("Connolly has failed to show that his separation from the Postal Service violated any relevant statute or regulation covered by the Tucker Act.... The Back Pay act is merely derivative in application; it is not itself a jurisdictional statute."); *Leistiko v. Secretary of the Army*, 922 F.Supp. 66, 75 (N.D.Oh.1996) ("The Back Pay Act applies only when a court has jurisdiction to entertain the plaintiff's suit under CSRA or some other statute."); *Allen v. Department of the Air Force*, 694 F.Supp. 1527, 1529 (W.D.Okla.1988) ("[A]bsent a particular allegation of violation of an applicable law or regulation, a plaintiff may not use the Back Pay Act to assert broader harms."); *Maney v. Department of Health & Human Servs.*, 637 F.Supp. 1128, 1130 (D.D.C.1986) (Grievance Examiner's implicit finding that personality conflict interfered with supervisor's duty under 5 U.S.C. § 2302 to impartially evaluate plaintiff was sufficient to constitute a violation of a law—rendering the supervisor's failure to give a better evaluation an "unjustified or unwarranted personnel action."); *Mack v. United States*, 653 F.Supp. 70, 72–73 n. 1 (S.D.N.Y.1986), *aff'd*, 814 F.2d 120 (2d Cir. 1987) (district court denied back pay on the merits under the BPA because plaintiff could not "show that the personnel action violated some statute or regulation," as "an FBI agent has no right to continued employment nor to any pretermination procedures.").

court pointed out, the Manual contains no language creating an entitlement to overtime. Thus, since DHS was not required by law to afford appellant the opportunity to work overtime, the decision to deny it to him was not an "unjustified or unwarranted personnel action" under the BPA. *Cf. also United States v. Testan,* 424 U.S. 392, 407, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (The BPA was "intended to grant a monetary cause of action only to those who were subjected to a reduction in their *duly appointed emoluments or position* " (emphasis added)); *Brown,* 287 U.S.App. D.C. at 14, 918 F.2d at 220 (BPA affords retrospective remedy only to those improperly denied a mandatory upgrade/promotion; "[i]f an upgrade is not of that virtually automatic, noncompetitive kind, the Act affords no relief."). We note that the DPM is consistent with this holding as it provides that "corrective action" for an unjustified or unwarranted personnel action may only be authorized if "consistent with applicable law or regulation." DPM ch. 11B, Part II, Subpart 8.3(4). Because here the Back Pay Act—the "applicable law"—provides no relief, the DPM alone cannot provide a retrospective monetary remedy.[4]

Although the BPA thus furnishes no basis for an award reflecting overtime pay which appellant hoped to receive in the future, the answer may be different with respect to the 21.5 hours that had been approved and for which he was scheduled to work, but which were cancelled "arbitrarily and capriciously," according to the examiner's original finding. Even where no statute, regulation, or collective bar-

gaining agreement entitles an employee to a personnel action, the Federal Circuit has explained that BPA relief may still be available if the employee can otherwise show "a clear entitlement" to such action. *Naekel v. Department of Transp., FAA,* 850 F.2d 682, 683 (Fed.Cir.1988). We are of the view that OEA should consider further whether overtime actually approved and scheduled, then arbitrarily withdrawn, is sufficient to constitute such clear entitlement.[5] If OEA concludes that it is, then it needs to resolve the apparent conflict in the hearing examiner's successive determinations of the reasons for the overtime cancellation. See part I, *supra,* at 230.

Accordingly, the decision of the Superior Court affirming the denial of back pay for loss of future overtime opportunity is affirmed. As to the 21.5 hours approved and scheduled but then cancelled, the decision is vacated and the case remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

KERN, Senior Judge, concurring in part, and dissenting in part:

I concur in the majority's conclusion that the decision of the trial court should be vacated, and the case remanded with respect to the 21.5 hours of overtime approved but cancelled. I am unable to join the opinion of the majority, however, concerning the additional overtime for which he would have been eligible except for the allegedly unwarranted employment action by the Department of Human Services

4. In July 1986, a trial judge entered a Consent Decree in the *Jerry M.* case which required that Oak Hill maintain, among other things, a resident to cottage life staff ratio of ten to one. *See District of Columbia v. Jerry M.,* 571 A.2d 178, 179, 190 n. 27 (D.C.1990). Although the *Jerry M. decree* did limit the agency's discretion in determining staffing levels, this court has not been made aware of any provision that rendered overtime mandatory for all current employees. Indeed, to satisfy the demand for increased staffing, the agency could have 1) hired additional temporary or perma-

nent employees, 2) moved current employees to different positions, or 3) directed the bulk of overtime assignments toward employees in lower grade positions (as a July 1986 internal memo purported to do). In short, contrary to our dissenting colleague's suggestion, *post* at 235, nothing in the *Jerry M.* decree created an entitlement to overtime work on the part of any individual Oak Hill staffer.

5. This assumes of course, that DHS wishes to litigate further the issue of the 21.5 hours.

("DHS"). I believe that under the exigencies extant in this case, if DHS abused its discretion as the Office of Employee Appeals ("OEA") initially determined, appellant should be awarded overtime under the Back Pay Act ("BPA"), 5 U.S.C. § 5596(b)(1) (1988).

Appellant worked as a Recreation Program Specialist at the Oak Hill Youth Facility until 1991. Appellant sought back pay under the BPA in 1987, both for 21.5 hours of overtime that he was scheduled to work but was canceled after a DHS decision to restrict appellant's overtime, and for overtime he would have worked if not for what he asserted had been an unwarranted employment decision.

The record reflects that in 1985 the Superior Court ordered the DHS facility at Oak Hill, where appellant was employed, to maintain a staff to resident ratio of one to ten. *Jerry M. v. District of Columbia,* No. 85–CA–1519 (D.C.Super.Ct.1985). As the facility was understaffed at that time, staff members were invited to volunteer to work overtime. Between December 6, 1986 and February 28, 1987, appellant volunteered and worked an average of forty-seven hours per week overtime. On March 5, 1987, appellant was informed that he would be restricted from working any additional overtime. On March 26, 1987, appellant initiated the informal grievance process, challenging the decision of DHS to restrict him from working overtime.

A hearing was held before the hearing examiner on May 13, 1991. DHS alleged that overtime was denied because: (1) appellant allegedly refused to accept the authority of his supervisor; and (2) appellant allegedly did not perform his work during his regularly scheduled hours. Appellant's supervisor did not testify before the hearing examiner, and did not offer an affidavit. The supervisor's deputy, however, testified that she spoke with the supervisor at some time and that the supervisor told her, "[I]t would be irresponsible to let Employee [appellant] work overtime when he did not work during the forty-hour week." Appellant submitted a deposition given by his supervisor in 1988, in an unrelated case, wherein the supervisor denied ever prohibiting appellant from working overtime, and ever having a conversation with anyone concerning appellant's overtime.

In 1991, the hearing examiner concluded "that in the absence of proof that management reasonably exercised its discretion for a legitimate reason, the March 5, 1987 overtime restriction was arbitrary and capricious." The hearing examiner further concluded that because appellant did not suffer a loss of pay, but only a loss of an opportunity to earn additional pay that the BPA did not afford relief. Appellant filed a petition for review with OEA.

OEA noted in its Opinion and Order of March 26, 1992 that

> [T]he examiner found that Agency [DHS] *abused its discretion* by barring Employee [appellant] from working overtime.... After reviewing the federal Back Pay Act ... and the cases decided thereunder, the examiner determined that the BPA only applied to actions which resulted in an actual loss of pay rather than the loss of an opportunity to earn additional pay. Since Employee [appellant] only suffered the loss of an opportunity to earn additional pay, the examiner concluded that Employee was not entitled to a back pay award. [Footnotes omitted; emphasis added.]

OEA denied appellant's petition for review, however, because the hearing examiner determined that the BPA did not encompass a claim for a loss of opportunity for overtime work.

Appellant filed a petition for review of the OEA decision with the Superior Court of the District of Columbia on April 27, 1992. On August 25, 1992, DHS filed its opposition to appellant's petition for review, alleging, *inter alia,* that the OEA's finding that the decision to deny appellant the opportunity to work overtime was not supported by substantial evidence. On

March 10, 1993, the Superior Court found that the record was insufficiently developed to grant the relief requested, and remanded the case for a determination of: (1) the specific reasons appellant was denied overtime; and (2) the amount of time appellant would have worked but for the wrongful employment action.

A hearing was held before the hearing examiner on May 13, 1993. DHS again failed to present the testimony or an affidavit of appellant's supervisor, but relied on the testimony of the supervisor's deputy given in 1991. DHS also presented the testimony of the Acting Deputy Superintendent of Oak Hill, who testified that appellant's supervisor never gave a reason for imposing the overtime restrictions on appellant. The Acting Deputy Supervisor testified that he heard appellant was not dependable, but could not confirm that what he heard played a role in the decision to restrict appellant's overtime. Based on this testimony, the hearing examiner concluded that appellant's supervisor "stopped Employee [appellant] from working overtime because he [the supervisor] believed that Employee [appellant] did not work during his regular forty-hour work week."[1]

The record further reflects that the hearing examiner found that an average employee at Oak Hill worked forty hours per week *overtime*. *Mitchell v. Department of Human Servs.*, OEA Docket No. 1602–0120–87R90R93 at 6 (May 25, 1993). In addition, the hearing examiner found that the agency needed people to work overtime between March 1987, and November 1, 1991, when appellant left Oak Hill and ceased working for DHS. *Id.* at 5–6. The hearing examiner also found that appellant could have worked forty hours overtime per week if it had not been for the wrongful employment action by DHS. *Id.* at 6.

The Superior Court issued its Memorandum Opinion and Order on May 3, 1996. The trial court stated:

> Q: Did you ever have any discussions with anyone, which you can recall today, about Mr. Mitchell working overtime?
> A: No, none whatsoever.
> Q: Did you ever give any direction that Mr. Mitchell should not be allowed to work overtime in the institutions?
> A: Never.
> Q: Did anyone ever tell you that such a direction had been issued, prohibiting Mr. Mitchell from working overtime in the institution?
> A: No.
> * * *
> Q: Was the fact that Mr. Mitchell, from the first day apparently that he walked into Oak Hill, stated that you were not his supervisor, did that in any way impede you or impede your deputies as a person who could approve overtime from approving overtime?
> A: None whatsoever. The issue never came up.

While this deposition was given in a different case, it is still sworn testimony by the supervisor himself on a crucial fact. Accordingly, because the hearing examiner relied on hearsay testimony to refute the sworn testimony of the supervisor himself, I would conclude that the hearing examiner's finding in 1993 concerning the reason appellant was denied overtime is not supported by substantial evidence.

---

1. "It is well-established that the technical rules of evidence applicable to the trial of court cases do not govern agency proceedings and that hearsay evidence, if it has probative value, is admissible at administrative hearings." *Jadallah v. District of Columbia Dep't of Employment Servs.*, 476 A.2d 671, 676 (D.C.1984) (citations omitted). However, we have held that an agency decision is not supported by substantial evidence where it relies on hearsay to resolve conflicted testimony:

> It is one thing to hold that hearsay evidence is admissible at agency hearings, but quite another thing to say that the direct sworn testimony of a witness on a crucial fact can be effectively refuted by hearsay, *i.e.*, the statements of persons not produced as witnesses—and hence not subject to cross-examination—when the party relying on such statements is in a position to call the declarants to the stand.

*Id. See also McLean v. District of Columbia Dep't of Employment Servs.*, 506 A.2d 1135, 1138 (D.C.1986).

The evidence that appellant did not accept the authority of his supervisor, and did not work during his regularly scheduled forty hour work week is contradicted by the deposition testimony appellant's supervisor gave in 1988. Appellant's supervisor specifically denied ever having a discussion concerning appellant's overtime:

The narrow legal issue ... is whether OEA erred as a matter of law when it sustained the hearing examiner's conclusion that the Back Pay Act did not provide a monetary remedy *for the wrongful overtime restriction in this case* because the restriction did not result in a withdrawal or reduction in Petitioner's [appellant's] pay.

(Emphasis added). The trial court concluded:

[W]hile the Back Pay Act does provide a monetary remedy for the wrongful restriction of overtime pay, which is otherwise due a worker by contract, rule or regulation ... no such compensatory remedy is recoverable as pay under the Act where the authority to schedule overtime to a particular worker is committed to the sole discretion of the Agency.

Under the Back Pay Act:

An employee of an agency who ... is found by appropriate authority under applicable law ... to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee

(A) is entitled on correction of the personnel action, to receive for the period for which the personnel action was in effect—

(i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period....

5 U.S.C. § 5596(b)(1).

An employee filing an action for back pay is entitled to an award for the over-

time that the employee would have received but for the unwarranted employment action. *Summers v. United States,* 227 Ct.Cl. 353, 648 F.2d 1324, 1329 (1981). The conscientious trial judge concluded here that although DHS arbitrarily and capriciously refused to permit appellant to work overtime, appellant could not recover under the Back Pay Act, because the authority to schedule overtime "is committed to the sole discretion of the Agency [DHS]." But, the OEA found that DHS "abused its discretion by barring Employee [appellant] from working overtime." Further, the record reflects that the exigencies extant in the operation of the Oak Hill facility required DHS to "plead with counselors to work overtime so that posts [would] be manned." The hearing examiner found that DHS needed people to work overtime at Oak Hill during the period appellant was restricted. "During a typical pay period [of the third quarter of fiscal year 1986–87], 102 staffmembers worked overtime, of whom 48 worked more than 20 hours and 15 worked more than 40."

The Back Pay Act is remedial and is intended to restore the employee to his *status quo ante. See White v. United States Postal Serv.,* 931 F.2d 1540, 1542 (Fed.Cir.1991). While the decision to approve overtime may have been discretionary, the court order and the understaffing of the facility placed practical limits on the agency's discretion. The unusual circumstances in this case, then, reflect an "unjustified and unwarranted" personnel action on the part of DHS which prevented appellant from receiving the overtime "pay" which appellant "normally would have ... received" during the period of 1987 to 1991 had DHS not taken the improper personnel action it did, 5 U.S.C. § 5596(b)(1), and therefore appellant has shown "a clear entitlement" to such action.[2] *See Naekel v. Department of*

---

**2.** Given the decision of the trial court in *Jerry M.,* Oak Hill undertook a program of actively soliciting all of its staff members to work

overtime. As I stated, DHS was forced to "plead with counselors to work overtime." Indeed, those who agreed to work overtime

*Transp., FAA,* 850 F.2d 682, 683 (Fed.Cir. 1988). Accordingly, I would vacate the entire order the trial court entered and remand this case for further proceedings.

worked an unusually large number of overtime hours. The failure to include appellant is at the heart of his contention that he was arbitrarily dealt with. Because DHS chose to address its staffing problem by requesting that its current employees work overtime, and appears to have arbitrarily and capriciously excluded appellant, I would conclude that appellant has shown an entitlement to work overtime.