**Rogelio M. SALINAS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–30C.

United States Court of Federal Claims.

April 25, 2002.

Roger M. Yale, of Dallas, Texas, for plaintiff.

Jan Marie Folena, Commercial Litigation Branch, with whom were Todd M. Hughes, Assistant Director, David M. Cohen, Director, and David W. Ogden, Acting Assis-

tant Attorney General, U.S. Department of Justice, of Washington, D.C., for defendant.

## *OPINION*

SMITH, Senior Judge.

This case is before the court on defendant's Motion to Dismiss. Defendant's motion asserts that plaintiff's claim should be dismissed pursuant to Rule 12(b)(4) of this court for failure to state a claim upon which relief can be granted. After reviewing the briefs, the court hereby GRANTS defendant's motion because this court lacks jurisdiction to hear the case.

## *FACTS*

Plaintiff Rogelio Salinas is a Border Patrol Agent stationed in the Laredo Sector of Texas. Plaintiff joined the Border Patrol in 1988 after 15 years in the Air Force. After conferring with the Border Patrol's Office of Special Counsel and receiving permission from the Chief Patrol Agent of the Sector, he ran for and was elected mayor of Encinal, Texas in 1992. He served as mayor from May 1992 until October 1995.

While plaintiff was mayor, the City purchased gasoline from a convenience station owned by Mrs. Salinas. Prior to the city council's vote, plaintiff sought the advice of the Texas Municipal League, which told him the arrangement would be fine as long as he did not participate in discussing or voting on the deal. Accordingly, the plaintiff did not participate in the vote and made full disclosure to the city council, which voted unanimously to purchase the gasoline from Mrs. Salinas' convenience store. Mrs. Salinas subsequently closed the store in the late spring of 1994 while the city had an outstanding bill of $1,500.00.

In January 1997, plaintiff and Mrs. Salinas were indicted by a Lasalle County, Texas, grand jury on ten charges including abuse of official capacity, theft by a public servant, misapplication by a fiduciary, and conflict of interest. The Border Patrol immediately placed plaintiff on administrative duty and subsequently suspended his employment on February 14, 1997. Plaintiff was tried on a single count and acquitted in early December

1997. The District Attorney obtained dismissal of the remaining counts. Plaintiff informed the Border Patrol and was promptly reinstated.

The plaintiff submitted three written requests for back pay in the spring of 1998. In a letter, Acting Chief Patrol Agent Richard Marroquin, Jr. told plaintiff that "[s]ector policy regarding backpay for periods of indefinite suspension following acquittal is to only grant back-pay when a matter is withdrawn by the district attorney based solely on a clear insufficiency of evidence, or dismissed by the court after defendant's attorney's motion based solely on clear insufficiency of evidence." He subsequently denied plaintiff's claim.

Plaintiff filed this action on January 19, 2000, alleging he was entitled to back pay under the Back Pay Act for the period between his suspension and reinstatement. The United States moved to dismiss on subject matter jurisdiction grounds, contending that challenges to propriety of suspensions lie only in the Merit System Protection Board under the Civil Service Reform Act or through arbitration pursuant to a collective bargaining agreement. Plaintiff responded that he has exhausted his administrative appeals and cannot appeal to MSPB. In addition, he argues that this court has jurisdiction because he is challenging the reinstatement based on "vague and unwritten policies" rather than the suspension or its underlying cause, the criminal indictment.

The plaintiff seeks back pay, annual leave, sick leave, time in service, time in grade, prejudgment interest, attorney's fees, expenses and court costs. Oral argument has been held.

## *DISCUSSION*

■ In its Motion to Dismiss, the defendant asserts that this court lacks jurisdiction to hear the plaintiff's claim under the Back Pay Act, 5 U.S.C. § 5596 (1996 & Supp.2001). The Back Pay Act allows an employee to appeal only where "an appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, [determines plaintiff] to have been affected by an unjusti-

fied or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee..." 5 U.S.C. § 5596(b)(1). The Back Pay Act is not a jurisdictional statute. *See United States v. Connolly*, 716 F.2d 882, 887 (Fed.Cir.1983). To reach the jurisdiction of this court "[s]ome provision of law other than the Back Pay Act must first mandate, or at least be interpreted to mandate, money damages to an employee suffering an unjustified or unwarranted personnel action..." *Walker v. United States*, 11 Cl.Ct. 77, 80 (1986) citing *Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed.Cir.1984); *United States v. Connolly*, 716 F.2d 882, 887 (Fed.Cir.1983); and *Montalvo v. United States*, 231 Cl.Ct. 980, 982, 1982 WL 25825 (1982). Therefore, the plaintiff must establish the court's jurisdiction through a law other than the Back Pay Act.

The defendant argues that this claim is covered by the Civil Service Reform Act (Reform Act), 92 Stat. 1111 *et seq.* (2000). In the Reform Act, Congress gave the Merit Service Protection Board (Board) jurisdiction over many employment actions including suspensions of more than 14 days. *See* 5 U.S.C. § 7512(2) (1996 & Supp.2001), 5 C.F.R. § 1201.3 (2001). The Reform Act gives the Merit System Protection Board primacy for the "administrative resolution of disputes over adverse personnel action" and does the same for the Federal Circuit with regard to judicial review. *United States v. Fausto*, 484 U.S. 439, 449, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). The Federal Circuit was equally direct when it stated that the Reform Act deprived the Tucker Act of jurisdiction over actions it might otherwise have and recognized that the Reform Act "does not encompass every adverse personnel action against a federal employee." *Worthington v. United States*, 168 F.3d 24, 26 (Fed.Cir.1999). Finally, "where an employee is provided a means of redress under the CSRA, that is, an appeal to the Board, the employee does not have an independent cause of action in the Claims Court." *McClary v. United States*, 775 F.2d 280, 282 (Fed.Cir.1985). The Border Patrol suspended plaintiff without pay for eleven months, placing the suspension within the scope of the Reform Act.

Thus, under the Reform Act the plaintiff must first appeal his back pay complaint to the Board and then to the Federal Circuit—not to this court.

In an effort to get jurisdiction in this court, plaintiff asks the court to rely on *Jankowitz v. United States*, 209 Ct.Cl. 489, 533 F.2d 538 (1976) and *Summers v. United States*, 227 Ct.Cl. 353, 648 F.2d 1324 (1981). In both cases, plaintiffs sought back pay after being reinstated in their government positions post-indictment. This court found it had jurisdiction over Back Pay Act disputes in each case. There are key distinctions between *Jankowitz* and *Summers* and this case. First, both were decided prior to the Supreme Court's decision in *Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830, and overruled to the extent that the Supreme Court decided that the Board has primary authority for Back Pay Act appeals. Second, *Jankowitz* was decided prior to the Reform Act, which became law in 1978. Finally, both were appeals from predecessors of the Board, which would have given this court jurisdiction under the Reform Act because this court filled the Federal Circuit's appellate function at that time. Therefore, the court cannot follow them because the Reform Act applies to plaintiff's suspension unlike those disputed in *Jankowitz* and *Summers*.

The plaintiff then points to the Federal Circuit's decision in *Richardson v. United States Customs Service*, 47 F.3d 415, 422 (1995), which held that *Jankowitz* and *Summers* establish that "in an appropriate case, a proper forum for testing the agency decision is the Court of Federal Claims in a Tucker Act suit based on the Back Pay Act." In *Richardson* the plaintiff appealed the agency's denial of his back pay to an arbitrator before filing suit in this court. The plaintiff in this case brought his appeal directly to this court which is not allowed by the Reform Act. While the plaintiff argues that he need not go to the Board first because he is not challenging the underlying suspension, nothing in the Reform Act or the cases he cites make such a distinction. *Richardson* may have been an appropriate case to appeal to this court. This is not. As *McClary, Worthington,* and *Read v. United States*, 254

F.3d 1064 (Fed.Cir.2001), hold, where the Reform Act governs the government's employment action—as it does here—this court has no jurisdiction.

Plaintiff seems to argue that the criminal trial which resulted in a not guilty verdict on one of the ten counts should have parity with an appeal to the Board. However, there is nothing in the Reform Act, Back Pay Act or any of the cases cited that support that claim. In his brief, the plaintiff does not support that assertion. The court finds it unpersuasive in light of the large body of law which states a claim that falls under both the Back Pay Act and the Reform Act—as this one does—must be appealed to the Board and only then to the Federal Circuit. This court has no jurisdiction over such claims.

The plaintiff also claims he exhausted all of his administrative remedies at the agency level. While that may be, the law remains the same. The Board alone has jurisdiction to hear appeals that involve a suspension of more than 14 days as is the case here. *See* 5 U.S.C. § 7512 (1996 & Supp.2001), 5 C.F.R. 1201.3(a)(2) (2001). Thus, it is the appropriate authority for those appeals.

Therefore, for all the reasons discussed above, this court lacks jurisdiction to hear plaintiff's case and GRANTS defendant's Motion to Dismiss.

It is so ORDERED.