Marco ZACCARDELLI, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 00–521C.

United States Court of Federal Claims.

Oct. 27, 2005.

Neal A. Connors, Belleville, IL, for plaintiff.

J. Reid Prouty, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General and Director David M. Cohen, for defendant.

## OPINION

FIRESTONE, Judge.

This matter comes before the court on the parties' cross-motions for summary judgment and the defendant's motion to dismiss. The plaintiffs, Marco Zaccardelli, Bruno Branchizio, and John Corvino ("plaintiffs"), are dual Italian–United States nationals who, until recently, were employed in Naples, Italy. The plaintiffs contend that they were hired and employed by the United States, through the Department of the Navy (the "government" or "Navy") until the United States fired them in violation of employment agreements negotiated on their behalf by their respective union representatives. The plaintiffs allege that, as part of these employment agreements, the government agreed that their employment would not be terminated based on their status as United States citizens "ordinarily resident" in Italy. They contend that the government fired them because of their "ordinarily resident" status, thus violating their contractual rights.

The government responds by contending that this court lacks jurisdiction over the plaintiffs' claims because the plaintiffs are Civil Service employees, whose rights are governed exclusively by statute and not by contract. The government further argues

that plaintiff Branchizio was not employed by the United States and, as such, would have no recourse against the United States in any event. In the alternative, the government asserts several affirmative defenses to the plaintiffs' claims, including the defense that the termination of the plaintiffs' employment was a sovereign act for which the United States is immune, and the defense that the government is not liable for any breach of contract because its performance was impracticable.

## BACKGROUND

The facts relevant to this case are not in dispute. All of the plaintiffs are dual nationals of both Italy and the United States. Plaintiffs Zaccardelli and Corvino were employed by the Navy Post Exchange, located on the United States Naval Base in Naples, Italy ("Base"). Plaintiff Branchizio worked at the Navy's Morale, Welfare and Recreation office, Naples ("MWR"). All of these plaintiffs were members of the American Federation of Government Employees, Local 3712 (the "Union"). The Union entered into a collective bargaining agreement with the Navy ("Navy Exchange CBA") regarding the employment of plaintiffs Zaccardelli and Corvino. The Union entered into a collective bargaining agreement with MWR ("MWR CBA") regarding the employment of plaintiff Branchizio.

The CBAs provided, in relevant part, that "the Employer will not dismiss U.S. citizens already employed on October 27, 1993 as a result of application of the 'Ordinarily Resident' criteria." Navy Exchange CBA Art. 6, § 13; MWR CBA Art. 6, § 10. "Ordinarily resident," in turn, is defined by a provision of the Status of Forces Agreement ("SOFA") entered into by the signatories of the members of the North Atlantic Treaty Organization ("NATO"), including Italy and the United States. The NATO SOFA provides that a person who is a national of both the United States and Italy, but who "ordinarily resides" in Italy, cannot be a civilian employee of the United States military forces in Italy. *See* NATO SOFA, Art. I, § 1(b). The parties do not dispute that the plaintiffs are "ordinarily resident" in Italy as described by the SOFA

and incorporated into the CBA, nor do they dispute that the plaintiffs were employed in their respective positions on October 27, 1993.

Because of their status as employees pursuant to the NATO SOFA, the plaintiffs enjoyed significant benefits in the form of exemptions from certain taxes while employed by the Navy Exchange and the MRW, respectively. These tax exemptions applied to "motor vehicles, petroleum products, and goods and services sold in military exchanges and commissaries. Such benefits are not available to citizens of the host country." Letter from Rowe to Sanseverino, May 6, 1998, Def.'s App. 29. The plaintiffs were receiving these tax benefits, pursuant to the NATO SOFA, despite the fact that they, as United States citizens "ordinarily resident" in Italy, were evidently ineligible to be employed pursuant to the NATO SOFA according to its terms.

In 1996, the plaintiffs' favored position became precarious when the Italian government began to arrest civilian employees of the United States military in Italy who, like the plaintiffs, were dual citizens of the United States and Italy. The Italian government prosecuted these employees, contending that they were "ordinarily resident" within the contemplation of the SOFA, and so were ineligible to be civilians employed by the United States military in Italy, and, as such, were unlawfully evading taxes when they took advantage of the SOFA's tax exemptions. Letter from Rowe to Sanseverino, Def.'s App. 29.

In March 1998, the Navy mandated that all Navy civilian employees who were dual nationals of the United States and Italy renounce their citizenship so that they would no longer be Italian citizens "ordinarily resident" in Italy but working for the Navy. Navy civilian employees who renounced their citizenship would no longer be in violation of the NATO SOFA, and presumably no longer would be subject to prosecution by the Italian government for tax evasion. Dual nationals who refused to renounce their Italian citizenship were terminated from employment by the Navy. Plaintiffs Zaccardelli and Corvino chose not to renounce their Italian

citizenship and were terminated in December 1998. Plaintiff Branchizio refused to renounce his Italian citizenship and retired in January 1999.

The plaintiffs' Union filed several grievances on behalf of the plaintiffs in response to the Navy's position. After the Navy denied these grievances, the Union subsequently filed an unfair labor practice complaint with the Federal Labor Relations Authority. The Union withdrew the complaint voluntarily and then filed a final grievance, which was denied by the Navy on December 18, 1998.

On August 28, 2000, the plaintiffs filed a complaint in this court. The government moved the court to dismiss under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") on December 5, 2000. While this motion was pending, the court suspended proceedings in light of a pair of cases that the Court of Appeals for the Federal Circuit was considering. These cases, *Mudge v. United States*, 308 F.3d 1220 (Fed. Cir.2002) and *O'Connor v. United States*, 308 F.3d 1233 (Fed.Cir.2002), related to the jurisdiction of this court to adjudicate actions brought by federal civil service employees. In light of these cases, the government filed a Revised Motion to Dismiss under RCFC 12(b)(1) and 12(b)(6) on June 26, 2003, which the plaintiffs opposed. The court suspended proceedings again in light of another case pending in the Federal Circuit in which the Court of Appeals addressed the remedies for grievances available under collective bargaining agreements.[1] This case, *Todd v. United States*, 386 F.3d 1091 (Fed.Cir.2004), was issued on October 5, 2004, after which this court ordered the plaintiffs to submit cross-motions for summary judgment on all issues remaining in the case. The plaintiffs filed their motion for summary judgment on all issues remaining in the case on February 7, 2005, and the government cross-moved for summary judgment on March 14, 2005. In their motion, the plaintiffs argue that the government violated their contract rights as found in the CBAs between the government and their Union. Specifically, the plaintiffs

contend that they had a right not to be terminated from their employment on account of their status as dual nationals "ordinarily resident" in Italy. The plaintiffs seek back pay and "specific monetary damages for loss of their tax free benefits and privileges" that they were accorded as employees of the Navy Exchange. Pls.' Resp. and Opp'n. 3. The government does not dispute that it terminated the plaintiffs as a result of the application of the NATO SOFA's ordinarily resident requirements. Instead, the government asserts both jurisdictional and substantive defenses to the plaintiffs' claims. For the reasons that follow, the court **GRANTS** the government's motions to dismiss and for summary judgment, and **DENIES** the plaintiffs' motion for summary judgment.

## DISCUSSION

### I. Standard of Review and Jurisdiction

#### A. Standard of Review

The government has moved to dismiss and for summary judgment, both on jurisdictional grounds. In light of the Federal Circuit's recent decision in *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed.Cir.2005), this court must determine at the outset whether it has jurisdiction over the plaintiffs' claims, and if jurisdiction is lacking, the court must dismiss the claims under RCFC 12(b)(1). "If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act." *Id.*

Where the government had raised the issue of jurisdiction in a dispositive motion, the plaintiff bears the burden of establishing jurisdiction. *Myers v. United States*, 50 Fed. Cl. 674, 680 (2001); *see Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). The court construes allegations in the complaint most favorably to the

---

1. The court also dismissed one of the original plaintiffs of the above-captioned case, Plaintiff D'Amore, on September 21, 2004, in light of the plaintiffs' admission that the sole basis for the plaintiffs' claim was the plaintiffs' CBAs, and the parties' agreement that Plaintiff D'Amore was not a member of the Union and therefore not covered by the plaintiffs' CBAs.

plaintiff, resolving ambiguities in its favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, the court may look beyond the pleadings and "inquire into jurisdictional facts" in order to determine whether jurisdiction exists. *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991). In the present case, the court has been presented with matters outside the pleadings, namely documents offered by the plaintiffs and the government in the appendices to their respective filings. The court will rely on these matters to the extent that they allow the court to determine whether it has jurisdiction over this case.

## B. Jurisdiction

### 1. The Court Does Not Have Jurisdiction to Hear Plaintiff Branchizio's Claims against the Navy's MWR Office—A Non–Appropriated Fund Instrumentality.

■ Plaintiff Branchizio was not employed by the Navy Exchange, but rather by the Navy's MWR office. As a result, the government contends that this court does not have jurisdiction over Plaintiff Branchizio's claim because this court has no jurisdiction to render judgments against non-appropriated fund instrumentalities ("NAFIs") like the MWR. Specifically, the government relies on *Pacrim Pizza Co. v. Pirie*, 304 F.3d 1291, 1292 (Fed.Cir.2002) (describing the Morale, Welfare and Recreation activity as "a local base level nonappropriated fund instrumentality"), for the proposition that MWRs are NAFIs and that they are therefore immune from suit in this court.

Plaintiff Branchizio admits that the MWR is a NAFI. He contends, however, that MWRs are so closely administered by the Navy that it is essentially part of the Navy and therefore not immune from suit.[2]

Plaintiff Branchizio, who was employed by the MWR, and not by the Navy Exchange, cannot sue in the Court of Federal Claims. The Federal Circuit has held that the Court of Federal Claims does not have jurisdiction over claims against NAFIs. *AINS, Inc. v. United States*, 365 F.3d 1333, 1338–39 (Fed.Cir.2004); *Core Concepts, Inc. v. United States*, 327 F.3d 1331 (Fed.Cir.2003). Most recently in *Lion Raisins, Inc. v. United States*, 416 F.3d 1356 (Fed.Cir.2005), the Federal Circuit affirmed the principle that the Court of Federal Claims does not have jurisdiction under the Tucker Act to hear claims for breach of contract against NAFIs. "[W]e have repeatedly held that the Tucker Act confers no jurisdiction over claims based on contracts made by NAFIs other than those contemplated in the 1970 amendments." *Id.* at 1365.

While a factual inquiry into the financing structure of an entity is sometimes required to determine whether or not it is a NAFI, the Federal Circuit has specifically addressed MWRs and has determined that they are NAFIs; as such, the Federal Circuit has concluded that MWRs are immune from suit in the Court of Federal Claims. *Pacrim Pizza*, 304 F.3d at 1293 ("[W]e conclude that the Morale, Welfare, and Recreation activity is not a covered entity [under the enumerated exceptions for exchanges]...)"[3]; *see also Sodexho Marriott Mgmt., Inc. v. United States*, 61 Fed.Cl. 229 (2004). In addition, the plaintiffs admit that "there is no dispute that MWR is a NAFI." Pls.' Mot. 11. As a consequence, this court has no jurisdiction over Plaintiff Branchizio's claim.

### 2. The Court Does Not Have Jurisdiction to Hear Plaintiffs Zaccardelli's and Corvino's Claims for Wrongful Termination.

■ Plaintiffs Zaccardelli and Corvino request this court to exercise jurisdiction over

---

2. Plaintiff Branchizio also attempts to distinguish *Pacrim Pizza* on the ground that he has a different status, as a U.S. civilian employee with the MWR, as compared to simply an outside contractor with the MWR. This is a distinction without a difference because the determinative factor as to whether this court has jurisdiction is the fact that the MWR is a NAFI. The status of the plaintiffs does not matter.

3. Of course, the Navy Exchange is itself a NAFI. However, this court has jurisdiction to hear suits against military post exchanges pursuant to an explicit exception to the NAFI doctrine codified in 28 U.S.C. § 1491(a) (2000). *See, e.g., AINS*, 365 F.3d at 1333.

their claims pursuant to the Tucker Act, 28 U.S.C. § 1491(a) (2000). The Tucker Act provides, in relevant part, that this court has "jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Tucker Act itself does not create a cause of action, but rather only provides jurisdiction when the plaintiff can point to an existing substantive right. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). For their part, Plaintiffs Zacardelli and Corvino assert that their substantive rights are found in the Navy Exchange CBA, which they claim was a contract entered into on their behalf between their Union and the government, and which they claim set out the terms of their employment, including their right not to be fired for their "ordinarily resident" status. Pls.' Resp. 3–4.

The government argues that the Navy Exchange CBA is not a "contract" governing employment which can serve as a basis for jurisdiction under the Tucker Act because the relationship between the government and its employees is governed by statute, not by contract. Def.'s Cross–Mot. 8. The government relies on *Adams v. United States*, 391 F.3d 1212, 1221 (Fed.Cir.2004) for the proposition that the terms of a federal employee's employment are governed by statute. In *Adams*, the court held that the plaintiffs held no contractual right to overtime compensation. *Id.* The court reasoned, "Like all federal employees, Appellants served by appointment. The terms of their employment and compensation, consequently, were governed exclusively by statute, not contract. They had not, and could not have, entered into any separate agreement with the Government, express or implied, for additional overtime compensation beyond that to which they were entitled by the applicable statute." *Id.*

Furthermore, the government argues that the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.) ("CSRA") revoked this court's jurisdiction over cases of federal employees alleging wrongful termination of employment. Def.'s Cross–Mot. 4. The government cites *United States v. Fausto*, 484 U.S. 439, 443, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), for the proposition that the CSRA was intended to be a comprehensive statutory scheme for the types of personnel actions encompassed by it. In *Fausto*, the Supreme Court held that the CSRA precluded judicial review of an agency's personnel decision. *Id.* "[W]e find that under the comprehensive and integrated scheme of the CSRA, the Claims Court (and any other court relying on Tucker Act jurisdiction) is not 'an appropriate authority' to review an agency's personnel determination." *Id.* at 454, 108 S.Ct. 668. The government argues that, because termination of employment is counted among the personnel actions contemplated by the CSRA[4], a federal civil service employee terminated from service is not entitled to judicial review in this court. Def.'s Cross–Mot. 5.

The plaintiffs do not dispute the government's reading of the CSRA and *Fausto* as they applied before 1994. The plaintiffs claim, however, that when Congress amended the CSRA in 1994, it reauthorized this court to hear disputes for employment grievances that otherwise fall within the CSRA. Prior to 1994, § 7121 of the CSRA provided that the grievance procedures set forth in a CBA would "be the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1) (1982). However, in 1994, Congress added the word "administrative" to this provision, thus making the grievance procedures set forth in a CBA the "exclusive *administrative* procedures for resolving grievances." 5 U.S.C. § 7121(a)(1) (1994) (emphasis added). The plaintiffs rely on the Federal Circuit's opinion in *Mudge* for the proposition that the addition of the word "administrative" has clarified this court's jurisdiction over cases alleging termination of employment in violation of contractual rights. Pls.' Mot. 5.

The Federal Circuit's dual 2002 opinions, *Mudge*, 308 F.3d 1220 and *O'Connor*, 308

---

4. The CSRA encompasses personnel actions including "(1) removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less." 5 U.S.C. § 7512(1)-(5) (2000).

F.3d 1233, address the significance of the addition of the word "administrative" to the CSRA in 1994. The trial court in *Mudge* dismissed the plaintiff's complaint seeking to recover back pay under the Prevailing Wage Systems Act, 5 U.S.C. §§ 5341–49 (2000), for lack of jurisdiction, holding that the CSRA limits a federal employee to administrative remedies for grievances covered by a CBA. *Mudge v. United States*, 50 Fed.Cl. 500 (2001). On appeal, the Federal Circuit reversed, holding that the addition of the word "administrative" in the 1994 amendment to § 7121(a) removed the CSRA's former bar to a judicial remedy. *Mudge*, 308 F.3d at 1228–29. Specifically, the court held that "the negotiated grievance procedures set forth in a federal employee's CBA constitute the exclusive administrative, but not judicial, procedures for resolving grievances that fall within its scope." *Id.* Similarly, in *O'Connor*, 308 F.3d at 1239, the court held that the plaintiffs had a right to judicial review for their claim for overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (2000). "Congress's addition of the word 'administrative' to the phrase 'exclusive procedures' in § 7121(a)(1) ... allow[s] a federal employee to seek judicial relief for grievances subject to the negotiated procedures contained in a CBA." *Id.*[5]

The government argues that *Mudge* and *O'Connor* are irrelevant here because, in contrast to *Mudge* and *O'Connor*, this case does not involve a claim for monetary damages based on a violation of a statute. According to the government, where the claim is based on the CBA itself, the grievance procedures set forth in the CBA are the exclusive remedy.

The government also relies on the Federal Circuit's post-*Mudge* decisions, *Bates v. Nicholson*, 398 F.3d 1355, 1366 (Fed.Cir.2005)[6] and *Salinas v. United States*, 323 F.3d 1047 (Fed.Cir.2003), to suggest that the 1994 amendments to the CSRA did not overrule *Fausto's* holding that this court lacks jurisdiction to review an agency's personnel decision under the CSRA. Def.'s Cross–Mot. 7. *Salinas* involved a claim for money damages under the Back Pay Act. 5 U.S.C. § 5596 (2000).[7] *Salinas v. United States*, 52 Fed.Cl. 399, 401–02 (2002). The trial court dismissed the case for lack of jurisdiction. *Id.* The court stated that the Back Pay Act is not a jurisdictional statute, and that the plaintiff therefore needed to "establish the court's jurisdiction through a law other than the Back Pay Act." *Id.* at 401. In addition, the court stated that the CSRA gave the Merit Systems Protection Board exclusive jurisdiction over this claim. *Id.* On appeal, the Federal Circuit affirmed. *Salinas*, 323 F.3d at 1049 ("*Fausto* and *Read* establish that 'if the [Civil Service] Reform Act gave the Board jurisdiction over a claim involving a specified subject matter or category of employee, the Claims Court had no jurisdiction over that claim under the Back Pay Act— even though in the particular case the employee could not assert the claim before the Board.'"), quoting *Read v. United States*, 254

5. In line with this interpretation, the Court of Federal Claims has subsequently allowed federal employees to bring suit in this court for alleged violations of statutory rights. *Bull v. United States*, 65 Fed.Cl. 407 (2005) (complaint sought unpaid overtime compensation and wages under FLSA); *Mudge v. United States*, 63 Fed.Cl. 363 (2004) (complaint sought pay differential under the Prevailing Rate Systems Act); *Curtis v. United States*, 59 Fed.Cl. 543 (2004) (complaint alleged a violation of the FLSA for failure to provide overtime pay).

6. *Bates* involved the question of whether the Board of Veterans Affairs had jurisdiction over a claim under 38 U.S.C. § 7104(a) (2000). 398 F.3d at 1359. The court relied on *Fausto* in its comparison of the situation with contract and employment disputes, in which "other review

mechanisms have been held to be exclusive." *Id.* at 1366.

7. The Back Pay Act provides that "An employee of an agency ... is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay ... [is entitled to back pay]." 5 U.S.C. § 5596(b)(1). *See also Fausto*, 484 U.S. at 454, 108 S.Ct. 668. The Back Pay Act alone does not provide for jurisdiction in this court. *See United States v. Connolly*, 716 F.2d 882, 887 (Fed.Cir.1983) ("The Back Pay Act is merely derivative in application; it is not itself a jurisdictional statute.")

F.3d 1064, 1067 (Fed.Cir.2001).[8]

When read together, *Salinas, Mudge* and *O'Connor* stand for the proposition that the jurisdiction of the Court of Federal Claims over a claim covered by the CSRA depends on whether the claim involves a statutory basis for jurisdiction that is independent of the CSRA. The plaintiff in *Salinas* relied on the Back Pay Act, which does not provide jurisdiction, and the Federal Circuit held that this court lacked jurisdiction. On the other hand, the plaintiffs in *Mudge* and *O'Connor* alleged violations of statutes that were money-mandating, the Prevailing Wage Systems Act and the FLSA, respectively, and the Federal Circuit held that this court had jurisdiction. Thus, where a plaintiff alleges a statutory basis for this court's jurisdiction that is independent of the CSRA, this court will have jurisdiction.

 Here, Plaintiffs Zaccardelli and Corvino have not alleged a statutory basis for jurisdiction that is independent of the CSRA. Nor do their alleged breach of contract claims based on the CBA provide this court with jurisdiction. The CBA does not constitute an express or implied contract for employment with the United States for purposes of Tucker Act jurisdiction. As the Federal Circuit stated in *Adams,* the terms of a federal employee's employment are "governed exclusively by statute, not contract." 391 F.3d at 1221. Moreover, as the Federal Circuit recently noted in *Todd,* "[T]he exclusive grievance procedures of the CBA preclude any party from challenging the CBA in the Court of Federal Claims." 386 F.3d at 1094. Thus, the claims of violations of the CBA at issue here are simply employee grievances, which are governed by the CBA's grievance procedures, as set forth in the CSRA.

This result is consistent with other Supreme Court cases involving CBAs in the private sector, which distinguish between the rights provided by statute and those provided under a CBA. For example, the Supreme Court has held that violations of rights under a CBA, in contrast to violations of statutory rights, are appropriately addressed by administrative proceedings rather than in the courts. *AT & T Techs., Inc. v. Commc'ns Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("[T]he union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator."). *See also Wright v. Universal Mar. Serv. Corp.,* 525 U.S. 70, 76, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) ("[A] grievance is designed to vindicate a 'contractual right' under a CBA, while a lawsuit under Title VII asserts 'independent statutory rights accorded by Congress.' "); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 49–50, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) ("In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress.").

Because Plaintiffs Zaccardelli and Corvino have failed to allege any statutory claims for relief and they do not have an enforceable contract for employment, the court holds that it has no jurisdiction. The plaintiffs are seeking compensation exclusively for violations of rights found in their CBA. *See* Order Dismissing Plaintiff D'Amore, September 21, 2004. As such, plaintiffs' claims fall squarely under the reasoning of *Fausto.* The plaintiffs' reliance on *Mudge* and *O'Connor* is misplaced because they involved money claims based on statutory violations that were independent of the CSRA.

## CONCLUSION

Plaintiff Branchizio is alleging a suit against a MWR, which is a NAFI. The court does not have jurisdiction over claims against NAFIs; thus, the court does not have jurisdiction over his claim. With regard to Plaintiffs Zaccardelli and Corvino, the basis of their claims is an alleged violation of their CBA rather than violations of a statutory right which would provide this court with

---

8. Based on *Salinas,* the plaintiffs' contention that the court must find jurisdiction where an administrative remedy is not adequate is unfounded.

jurisdiction. Thus, the court does not have jurisdiction over their claims. Consequently, the government's motions to dismiss and for summary judgment are **GRANTED**[9] and the claims of the plaintiffs are **DISMISSED** under RCFC 12(b)(1). The plaintiffs' motion for summary judgment is therefore **DENIED**. The clerk is directed to enter judgment accordingly. Each party is to bear its own costs.

**IT IS SO ORDERED.**

9. The government has also asserted the affirmative defenses of impracticability and the sovereign acts doctrine. Because the court dismisses the plaintiffs' claims for lack of jurisdiction, the court does not have occasion to reach these defenses.